United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-20433

Summary Calendar

MEKURIA W MEMBERU

Plaintiff - Appellant

v.

ALLRIGHT PARKING SYSTEMS INC

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. H-01-CV-2532

Before KING, Chief Judge, and DAVIS and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Mekuria W. Memberu appeals the district court's grant of summary judgment against him on his employment-discrimination claims. For the following reasons, we affirm.

## I. Facts and Proceedings

Defendant-Appellee Allright Parking Systems, Inc. hired

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Memberu to work as a "meter checker" in 1992. In May 1999, Allright promoted Memberu to assistant manager of its downtown Houston surface parking area.[2] Several months later, the night manager of that parking area retired, and in December 1999, Memberu began serving as night manager (a position superior to that of assistant manager). But Allright--dissatisfied with Memberu's performance as night manager--subsequently promoted a different employee to night manager in October 2000, and it reassigned Memberu to the position of assistant night manager. Then, in January 2001, Allright fired Memberu, after he failed to show up for work without warning on New Year's Eve 2000.[3]

In July 2001, Memberu sued Allright, asserting claims under 42 U.S.C. § 1981 and seeking, _inter alia_, damages and reinstatement.[4] His complaint alleges that Allright discriminated against him on the basis of his race[5] by paying him

---

[2]    Both parties and the district court refer to the positions of assistant manager, night manager, and assistant night manager as supervisory positions. Accordingly, when we refer to a supervisor or a supervisory position, we have in mind any of these three managerial roles.

[3]    The parties dispute whether Memberu was in fact scheduled to work that night. This conflict is irrelevant to our resolution of this appeal because Memberu has not established a prima facie case on either of the claims regarding his termination that he advances on appeal. See _infra_ Part III.D. Consequently, we do not need to discuss any of Allright's asserted nondiscriminatory explanations for Memberu's dismissal.

[4]    In addition, Memberu asserted a cause of action for slander under Texas law, but he later withdrew that claim.

[5]    Memberu, an African immigrant, is black.

less than and failing to provide him with all of the benefits received by similarly situated white employees, demoting him from night manager to assistant night manager, and terminating his employment.  Also, Memberu asserts that his termination was retaliatory discrimination prohibited by § 1981.

Allright moved for complete summary judgment in August 2002. Memberu opposed the motion with circumstantial evidence that he contends shows that Allright intentionally discriminated against him in violation of § 1981.  Accordingly, the district court correctly utilized the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in adjudicating Allright's motion.  Mason v. United Air Lines, Inc., 274 F.3d 314, 318 (5th Cir. 2001) ("We apply the McDonnell Douglas burden-shifting framework in Title VII and 42 U.S.C. § 1981 cases.").  Under the Court's decision in McDonnell Douglas and its progeny, a plaintiff alleging employment discrimination must first establish by a preponderance of the evidence a prima facie case of racial discrimination.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); see also McDonnell Douglas, 411 U.S. at 802.  Then, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for its behavior.  See Burdine, 450 U.S. at 254-56; McDonnell Douglas, 411 U.S. at 802.  Finally, if the employer meets this burden of production, "the presumption raised by the prima facie case is rebutted" and "drops from the case;" the employee is then

3

required to "demonstrate that the proffered reason was not the true reason for" the adverse employment action. Burdine, 450 U.S. at 255-56 & n.10; see also McDonnell Douglas, 411 U.S. at 804-05. To do so, the plaintiff may prove by a preponderance of the evidence either that the employer's proffered explanation is incredible or that a discriminatory reason more likely motivated the employer. Burdine, 450 U.S. at 256. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). To survive summary judgment, however, the employee need only present sufficient evidence for a reasonable factfinder to infer discrimination. See Crawford v. Formosa Plastics Corp., La., 234 F.3d 899, 902 (5th Cir. 2000).

Applying the principles articulated above, the district court granted Allright's summary-judgment motion in part and denied it in part in December 2001. Addressing Memberu's discriminatory-discharge and discriminatory-demotion theories, the court held that Memberu had failed to respond to Allright's asserted nondiscriminatory justifications by presenting evidence that would raise a genuine issue of fact regarding intentional discrimination. Moreover, the district court concluded that Memberu had not established a prima facie case regarding his

4

allegation that his dismissal evidences disparate treatment. Next, the court ruled that Memberu had failed to substantiate a prima facie case on his claim of discriminatory denial of benefits. The district court also rejected Memberu's retaliation claim, concluding both that he had not put forth enough evidence for a prima facie case and, alternatively, that he had not discredited Allright's proffered explanations for his termination. But the district court denied summary judgment on Memberu's wage-discrimination claim, since Allright had failed to address in its summary-judgment materials Memberu's specific allegations regarding that claim--i.e., Allright had not articulated a nondiscriminatory explanation for the wage differential.

Allright then filed a supplemental motion for summary judgment, responding to Memberu's evidence that he was paid less than a similarly situated white employee. In April 2003, the district court granted summary judgment for Allright on Memberu's wage-discrimination claim. According to the district court, Memberu had failed to demonstrate that Allright's proffered justification for the pay differential was either false or a pretext for discrimination. Having disposed of each claim in this litigation, the district court entered a final judgment in favor of Allright.

## II. Standard of Review

5

"In employment discrimination cases, the court reviews summary judgments de novo, applying the same standard as the district court." See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1119 (5th Cir. 1998). And the district court applies the following standard: "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). Where, as here, the burden of production at trial ultimately rests on the non-movant, "the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 424 (5th Cir. 2000). By contrast, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)), and "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When the district court reviews the support for the non-movant's case, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255.

6

## III. Discussion

Memberu appeals, asserting that the district court improperly granted summary judgment against him on each of his § 1981 claims. We address his contentions below, and we conclude that the district court correctly determined that Memberu had not presented sufficient evidence to permit a reasonable jury to find for him on any of his allegations of discrimination.

### A. Wage Discrimination

On appeal, Memberu contends that the district court erred in granting summary judgment against him on his claim that Allright violated § 1981 by paying him less than it paid a white assistant manager, Elster Matthews. In response, Allright asserts that it compensated Matthews at a higher rate because of his greater qualifications and experience.[6] Specifically, Allright notes that, at the time of Memberu's promotion to assistant manager, the company's practice was to pay new supervisors at an entry-level rate. In contrast to Memberu, Matthews was first promoted to a supervisory position in 1987; thus, Matthews had worked as a supervisor for about twelve years before Memberu was first promoted to assistant manager in 1999. During those twelve years, Allright argues, Matthews earned various raises and merit

---

[6]    Allright also contends that Memberu has not established a prima facie case regarding this claim. Because we affirm on a different basis, we need not address the company's arguments on this point.

7

increases, which resulted in his higher wage.  Moreover, the company contends that the experience Matthews gained from his long tenure as a supervisor made him more valuable to the company.  See Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1048-49 (5th Cir. 1996) (stating that experience is a legitimate, nondiscriminatory reason for a wage differential).  Allright has presented evidence that tenure in a supervisory capacity correlated to higher wages.  Accordingly, the company has met its burden of production regarding its nondiscriminatory explanation for the wage differential.

Contending that Allright's proffered explanation is false or a pretext for discrimination, Memberu argues first that Matthews was less qualified because Matthews is less educated.  Second, Memberu asserts that, since he--not Matthews--assumed the position of night manager in December 1999 when the previous night manager retired, Matthews could not have been more qualified.  Answering these contentions, Allright notes that it did not rely on any educational differences between Matthews and Memberu as a basis for the wage differential; thus, it argues that this is irrelevant.  Additionally, Allright explains that Matthews previously had worked as night manager for several years before asking to resume his former position of assistant manager, a request which Allright accommodated.  Allright maintains that this is the reason that Memberu, and not Matthews, was asked to work as night manager in 1999.

Memberu has failed to raise a genuine issue of fact regarding whether Allright's nondiscriminatory explanation for the pay differential is either false or a pretext for discrimination. Memberu's appellate brief focuses on the fact that the two employees were paid different wages. But he never rebuts Allright's assertion that length of service as a supervisor explains the differential, nor does he offer any other evidence that a discriminatory purpose drove the wage gap between himself and Matthews.[7] As the district court held, these failures are fatal to Memberu's wage-discrimination claim. See Reeves, 530 U.S. at 148 (holding that "a plaintiff's prima facie case, <u>combined with sufficient evidence to find that the employer's asserted justification is false</u>, may permit the trier of fact to conclude that the employer unlawfully discriminated" (emphasis added)).

## B.   Discriminatory Denial of Benefits

Memberu contends on appeal that he never received a gas allowance to which he was entitled as a supervisor. To make out a prima facie case on this claim, Memberu must show, <u>inter alia</u>, that a similarly situated employee outside of his protected class was treated more favorably. <u>Okoye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507, 513 (5th Cir. 2001). In granting

---

[7]   Instead, Memberu's own summary-judgment materials indicate that two black supervisors, both of whom had served in supervisory positions longer than both Matthews and Memberu, were paid more than both Matthews and Memberu.

9

summary judgment against him, the district court found that Memberu had failed to present any evidence on this point, and Memberu's appellate brief contains no mention of any similarly situated employees. Accordingly, we agree with the district court that he has not established this element of his prima facie case and, therefore, that summary judgment is appropriate on this claim. Pratt v. City of Houston, 247 F.3d 601, 606 (5th Cir. 2001) ("To survive a motion for summary judgment, a [§ 1981] plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence." (footnote omitted)).

## C. Discriminatory Demotion

Memberu contends that Allright violated § 1981 by demoting him from night manager to assistant night manager in 2000 and replacing him with a white employee, Zaki Hattab. Allright disagrees that it demoted Memberu, asserting instead that he only served as night manager on a provisional basis and that his claim is actually one for discriminatory failure to promote. The district court noted this dispute, but it concluded that it did not have to resolve the conflict because, even if Memberu could establish a prima facie case under either theory, he had not rebutted adequately Allright's nondiscriminatory justifications for placing Hattab in the night manager position.

Before the district court and on appeal, Allright maintains

that Memberu performed unsatisfactorily as night manager. Specifically, the company asserts (1) that revenues from parking lots controlled by Memberu were insufficient; (2) that, although he was responsible for the entire downtown surface parking area, he spent most of his time on one lot; and (3) that Memberu often delegated certain "non-delegable" duties. Because of these shortcomings, Allright decided to replace Memberu, and it chose Hattab based on his experience successfully managing a valet parking area. Allright submitted a declaration from its then-general manager supporting the above nondiscriminatory explanations for its actions. Consequently, if there were a trial in this matter, Memberu would have to prove intentional discrimination without the aid of the McDonnell Douglas presumption. Burdine, 450 U.S. at 255-56 & n.10.

Attempting to raise a genuine issue of fact regarding intentional discrimination, Memberu directs us to his own affidavit, which disputes the assertion that he performed poorly as night manager. The affidavit explains that he had no control over budget projections, but it does not contest the allegation that revenue was deficient during his tenure. Further, the affidavit claims that Memberu did visit the various lots and argues that, if he had not been doing his job, he would have been "written up." Finally, the affidavit admits that sometimes Matthews and not Memberu checked other lots, but it insists that Memberu did not know that this practice was unacceptable. While

a jury could infer from Memberu's statements that he was unaware that his performance was below expectations, this does not indicate that Allright's employee lied in stating that the company was dissatisfied.  Moreover, even if a jury felt that Memberu had performed adequately, we have said that "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason [and] . . . a dispute in the evidence concerning [the employee's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the employer's] proffered justification is unworthy of credence."  Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991).

Memberu also asserts that he "was eminently more qualified for the [night] Manager's position than was Hattab."  Appellant's Br. at 13.  But the only evidence that Memberu refers to in support of this claim is his own affidavit, which contains only a plain statement that he was more qualified and fails to contradict the statements of Allright's then-general manager regarding Hattab's qualifications.  Memberu's brief fails to direct us to any other evidence in the record that would support an inference of intentional discrimination.  Nevertheless, Memberu contends that summary judgment is inappropriate because a jury could choose to disbelieve the testimony of Allright's employee.

Viewing the record in the light most favorable to Memberu,

12

we cannot conclude that Memberu has provided sufficient evidence to permit a jury to find that Allright's nondiscriminatory explanation is either false or a pretext for discrimination. See Reeves, 530 U.S. at 148; Burdine, 450 U.S. at 256; see also Anderson, 477 U.S. at 256-57. While it is true that a jury could disbelieve Allright's witnesses, this does not relieve Memberu of his burden of proffering evidence from which a reasonable jury could infer intentional discrimination. See Reeves, 530 U.S. at 143; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary-judgment stage of an employment-discrimination case); see also Matsushita, 475 U.S. at 587. Since we agree with the district court that he has not met this burden, summary judgment is proper here.

## D. Discriminatory and Retaliatory Discharge

On appeal, Memberu maintains that Allright violated § 1981 by terminating him. Memberu first asserts that he should not have been fired for missing work without calling on New Year's Eve 2000, since (he claims) Matthews missed work without calling on Thanksgiving Day 2000 and was not fired. According to Memberu, this disparate treatment renders his discharge an act of intentional discrimination.

But Memberu has not presented any evidence, besides an

13

allegation in his own affidavit, that Matthews was scheduled to work on Thanksgiving. Moreover, that assertion from Memberu's affidavit conflicts with his deposition testimony, in which he stated that Thanksgiving was Matthews's day off. In addition, Allright submitted the declaration of its assistant operations manager, Glenn Guest, who was responsible for creating the work schedules for employees at the downtown surface parking area in November 2000; Guest confirmed that Matthews was not scheduled to work on Thanksgiving. We therefore agree with the district court that Memberu has failed to establish that Matthews (a similarly situated white employee) was treated more favorably than he. Because this is an element of Memberu's prima facie case on his disparate-discipline claim, Okoye, 245 F.3d at 513, summary judgment is appropriate. Pratt, 247 F.3d 601, 606.

Second, Memberu contends that Allright terminated him in retaliation for his having complained previously of racial discrimination. To establish a prima facie case on this claim, Memberu must show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. See Byers, 209 F.3d at 427. The district court expressed some doubt concerning whether Memberu had shown that he had engaged in a protected activity. But the court assumed for the sake of argument that he had, and it held that his claim nevertheless failed because he had not meet his

14

burden of establishing any causal connection between a protected activity and his dismissal.  See Sherrod, 132 F.3d at 1122 ("In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity.").  On appeal, Memberu simply fails to address the district court's conclusion on this issue.  In particular, he has not advanced any evidence that the Allright employees who decided to terminate him were aware of his complaints of discrimination.  Cf. id. 1122-23 (concluding that the causal aspect of the prima facie case is met when the decision-maker signs a termination letter containing references to the plaintiff's protected activities).  Consequently, we affirm the district court's grant of summary judgment against him.

## IV. Conclusion

Accordingly, the district court's judgment is AFFIRMED.

15