# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 6, 2013

No. 12-10983
Summary Calendar

Lyle W. Cayce
Clerk

RONALD L. GILES,

Plaintiff - Appellant

v.

CITY OF DALLAS,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-786

Before DAVIS, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this case involving allegations of racial discrimination, racial harassment, and retaliation in violation of Title VII, Plaintiff-Appellant Ronald L. Giles appeals the district court's order denying his motion for leave to amend his complaint and granting summary judgment in favor of Defendant-Appellee, the City of Dallas. Giles argues that the district court abused its discretion

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10983

when it denied his motion for leave to amend his complaint to replace his time-barred Title VII claim with a timely § 1983 claim. He further argues that the district court erred in concluding, in the alternative, that no genuine issue of fact existed as to the merits of his § 1983 claim. We agree with the district court and find no evidence of discriminatory motive that raises a genuine issue of material fact under either the original Title VII claim or under the amended 42 U.S.C. § 1983 claim. Accordingly, we AFFIRM the district court's order on the merits without reaching Giles' threshold arguments asserting good cause for leave to amend pursuant to Federal Rule of Civil Procedure 16(b).

## I.

### A.

Plaintiff-Appellant Ronald L. Giles ("Giles") was hired by the City of Dallas in 1982 as a police officer assigned to the Dallas Police Department ("DPD"). Giles, who is African-American, has been employed by the DPD for approximately 29 years, and is currently a Sergeant in the DPD's Communications Section. He has worked in Communications for approximately seven years. Giles' role in the division involves supervising other employees. R. 148-52.

Along with several African-American coworkers, Giles filed a complaint with the City of Dallas' Human Resources department in February 2008. The complaint alleged pervasive employment discrimination, disparate treatment, and retaliation in the DPD's Communications Section. Specifically, the complaint alleged that: "Black supervisors are not allowed to take proper corrective action against white subordinates"; "Black supervisors are not allowed to exercise proper authority as it relates to white subordinates"; divisional discrimination against African-American employees in the hiring, training, discipline, and assignments of employees, and unfair representation in positions

No. 12-10983

of status relative to white employees. Giles claims that the City of Dallas' Internal Affairs Division did not provide any relief at all to the complaints alleged in the claims. Giles further alleges that the City of Dallas retaliated against him for filing the claim and seeking to assert his rights.

In April 2009, DPD began an investigation into Giles' off-duty work practices following an internal allegation that Giles had violated Department policy. Dallas police officers are given the privilege of engaging in "off-duty" employment, such as providing private security services, subject to certain restrictions and administrative requirements set forth in DPD General Order 421.00. The DPD policy governing off-duty work seeks to prevent the practice from interfering with on-duty officer performance, and it provides that violators may be subject to disciplinary action. The DPD investigated complaints that Giles failed to submit off-duty work cards for the period from January to March 2009. Although Giles disputes that he failed to turn in his cards, he acknowledges that his work schedule resulted in violations of the DPD policy governing off-duty work on multiple occasions during the relevant period.

On July 8, 2009, DPD Lieutenant Madison ("Madison") submitted a memorandum to Assistant Chief Cynthia Villarreal through the chain of command suggesting that Communications adopt a rule that limits the period sergeants may work in the division to five years. The stated rationale for the proposed rule was to improve training opportunities for new sergeants, increase the exchange of skills throughout the department, and reinvigorate the "stagnant" division. The memorandum did not reference the race or gender of the sergeants working in Communications who would be affected by the rule. Giles alleged in deposition that Madison proposed the policy with the purpose of transferring African-American supervisors out of the division. However, the policy was not ultimately implemented. Giles alleged that the policy was not implemented because it would have negatively affected two Caucasian

3

sergeants. Giles alleged that it was common knowledge that this was the reason the policy was not implemented, but acknowledged that he was not aware of other evidence to establish the DPD's motivation for not implementing the policy.

On September 10, 2009, Giles was suspended from duty without pay for three days on the grounds that he violated the DPD's policy governing off-duty work on seven occasions between January and March 2009. Giles was also restricted from working any off-duty jobs for a period of ninety days. Giles asserts that these actions were without basis and amounted to discrimination and retaliation. Giles' suspension was approved by his chain of command, and like violators have been subject to similar disciplinary penalties.

On October 16, 2009, Giles and two other sergeants received an email from one of Giles' supervisors announcing that he was going to be quizzed about his job duties based Communications' division's "[Standard Operation Procedure]." Giles alleges that this act amounted to discrimination and retaliation against him. However, he acknowledges that one of the other two recipients of the email was a white colleague.

Giles continues to work in the DPD's Communications division, but claims that the investigation into his IAD complaint either did not take place or was unsatisfactory. He further alleges that pervasive discrimination and retaliation against him are "ongoing practices" within the division.

**B.**

Giles filed an Equal Employment Opportunity Commission ("EEOC") charge against the City on November 16, 2009, asserting claims of racial discrimination, retaliation, and hostile work environment in violation of Title VII. The EEOC issued Giles a right-to-sue letter on or about January 12, 2010, which Giles acknowledges having received on January 14, 2010.

No. 12-10983

Giles' first counsel of record, F. Benjamin Riek, III ("Riek"), filed the present Title VII claim alleging racial discrimination and retaliation on April 19, 2010, ninety-five days after Giles received his EEOC letter and five days after the statutory deadline had passed. *See* 42 U.S.C. § 2000e–5(f)(1). Riek was permitted to withdraw as counsel from the case on January 7, 2011, pursuant to an order from the Board of Disciplinary Appeals suspending him from law practice for six months due to conduct in an unrelated case. After conducting discovery and depositions, Giles' second counsel of record also withdrew from the case due to his wife's terminal cancer on December 30, 2011.

The City of Dallas subsequently filed a Motion for Summary Judgment on January 3, 2012, arguing *inter alia*, that Giles' Title VII claims were time-barred because they were filed five days after the ninety-day statute of limitations. On May 25, 2012, Giles, with the assistance of his third counsel of record, moved for leave to amend his original complaint, seeking to replace his Title VII claims with claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 arising out of the same facts.

The district court issued an order denying Giles' motion for leave to amend and granting summary judgment for the City of Dallas on the grounds that Giles' Title VII claim was time-barred. Because the motion had been filed after the deadline for adding new parties to the suit, the district court first reviewed the motion using Rule 16(b), which "'governs amendment of pleadings after a scheduling order deadline has expired.'" *Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 419 (5th Cir. 2013) (quoting *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)); *see also* Fed. R. Civ. P. 16(b)(4). The district court rejected Giles' argument that he had shown good cause because, *inter alia*, his first attorney had been suspended from the practice of law and his second attorney had withdrawn for personal reasons; the court concluded that Giles had not explained "why his two prior attorneys failed to

5

No. 12-10983

meet the deadline to move for leave to amend his complaint." Because in the district court's estimation Giles had not shown good cause to modify the scheduling order, it did not apply "'the more liberal standard of Rule 15(a)' to the decision to grant or deny leave." *Crostley*, 717 F.3d at 419. In the alternative, however, the district court concluded that Giles' § 1983 claim failed on the merits because the record did not contain evidence that there was discriminatory intent behind any of his employer's actions. Giles timely appealed. *See* Fed. R. Civ. P. 4(a)(1)(A), 6(a)(1).

## II.

Jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Giles' untimely filing of his original Title VII action does not create a jurisdictional bar to suit. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (holding that the ninety-day filing requirement is not a jurisdictional prerequisite and is subject to equitable tolling); *see also* 42 U.S.C. § 2000e–5(f)(1) (establishing ninety-day deadline for filing suit following issuance of EEOC right-to-sue letter).

## III.

"We review a summary judgment *de novo*, applying the same standard as the district court." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). Summary judgment is appropriate when the pleadings, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *see* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 249. Conclusory "allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

## IV.

On appeal, Giles argues that the district court abused its discretion when it denied his motion for leave to amend his complaint for lack of good cause, *see* Fed. R. Civ. P. 16(b)(4), and that the district court erred in finding, in the alternative, that his § 1983 claim would fail on substantive grounds. With regard to whether Giles had good cause for seeking leave to amend his concededly untimely Title VII claim to include a timely § 1983 claim, we note the troubling circumstance that his first counsel of record, Riek, in another Title VII case had been accused of misrepresenting his failure to meet an EEOC filing deadline, and in January 2012 resigned from the practice of law in Texas in lieu of discipline.[1] While we may take judicial notice of this fact, we do not fault the

[1] When Riek was permitted to resign from the practice of law in Texas, he had two disciplinary matters pending, one of which alleged that he had misrepresented to a client his failure to meet an EEOC deadline, an allegation which bears some similarity to what occurred in Giles' case. *See In re F. Benjamin Riek, III*, Tex. Misc. Docket No. 12-9006 (Jan. 24, 2012), Commission for Lawyer Discipline Resp. to Mot. for Acceptance of Resignation, at 1; *see also In re Moity*, 320 F. App'x 244, 249 (5th Cir. 2009) (approving judicial notice of attorney's disciplinary records because "[o]ne court may . . . take judicial notice of another court's judicial actions"); *accord, e.g.*, *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012); *Bridges v. Bell*, 238 F.3d 410 (4th Cir. 2000).

While we do not take judicial notice of the disciplinary records for the truth of the matter asserted therein, we may take notice of the fact that Riek was permitted to resign from the practice of law in lieu of discipline and that, according to the Texas Commission for Lawyer Discipline, those allegations against him were pending at that time. *See, e.g.*, Charles A. Wright & Arthur R. Miller, 21B Fed. Prac. & Proc. § 5106.4 (2d ed. & Supp. 2012); Fed. R. Evid. 201; *compare, e.g.*, *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (opining that findings of fact in prior proceedings will generally be subject to dispute under Rule 201), *and Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (citation omitted)), *with Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 n.6 (7th Cir. 1997) ("To protect against improper reliance on facts from prior proceedings, some appellate decisions have refused to allow a court

district court for not doing so when Giles apparently did not bring it to the court's attention. However, we need not consider whether Giles set forth circumstances sufficient to establish good cause for leave to amend under the circumstances because, for the reasons that follow, we agree with the district court's assessment that Giles did not make out a § 1983 case on the merits. Because we may affirm a grant of summary judgment on any ground supported by the record, even if it is not the principal ground on which the district court relied, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193 (5th Cir. 2013), we reach the merits of Giles' case and affirm the district court's order on substantive grounds.

In adjudicating Title VII claims of racial discrimination, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We also apply the same framework in adjudicating claims brought under 42 U.S.C. §§ 1981 and 1983 alleging racial discrimination in violation of the Equal Protection Clause. *See Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 961-62 (5th Cir. 1981); *see also Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001). A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). To establish a prima facie case of discrimination using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that he (1) was a member of a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) received less favorable treatment than similarly situated individuals outside of his protected group. *See Wheeler v. BL Dev.*

---

to take judicial notice of any adjudicative fact in a court record for the truth of the matter asserted. . . . We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed. However, it is conceivable that a finding of fact may satisfy the indisputability requirement of Fed. R. Evid. 201(b)." (citations omitted)).

*Corp.*, 415 F.3d 399, 405 (5th Cir. 2005); *see also McDonnell Douglas*, 411 U.S. at 802.

Likewise, to establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII or § 1983; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57. However, the anti-retaliation provision, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 559-60.

If the plaintiff makes such a showing, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for its behavior. *See Mason*, 274 F.3d at 318; *McDonnell Douglas*, 411 U.S. at 802. If the employer provides this reason, the presumption raised by the prima facie case is rebutted, and the burden of proof returns to the plaintiff to demonstrate that the employer's articulated reason is pretext for the real, discriminatory or retaliatory purpose. *See Mason*, 274 F.3d at 318; *see also McDonnell Douglas*, 411 U.S. at 804-05. To carry this burden, the plaintiff must prove by a preponderance of the evidence either that the employer's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). To survive summary judgment, "the employee [must] present sufficient evidence for a reasonable factfinder to infer discrimination." *Memberu v. Allright Parking Sys.*, 93 F. App'x 603, 606 (5th Cir. 2004) (per curiam) (unpublished) (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

No. 12-10983

Giles alleges race discrimination, retaliation, and a racially hostile work environment in violation of 42 U.S.C. §§ 1981 and 1983. These claims of racial discrimination fail as a matter of law because Giles is unable to show disparate treatment to establish a prima facie case of discrimination under the *McDonnell Douglas* standard. Giles alleges that he suffered discrimination when his supervisor informed him by email that he would be quizzed on his job duties. However, in his deposition, Giles also acknowledges that the email was addressed to other sergeants, including a Caucasian one. There is no evidence in the record, and Giles does not allege, that the other recipients of the email were not in fact quizzed on their job duties. The fourth prong of the standard is thus left unsatisfied because Giles is unable to establish that employees of other races received more favorable treatment.

Giles also points to the DPD's proposed five-year in-and-out rule for Communications division employees, arguing that it amounted to an act of discrimination allegedly because it targeted African-American employees like him. However, this claim fails on the third prong of the standard. Because the policy was never implemented, it cannot amount to an adverse employment action. Giles further acknowledges that, even if it had been implemented, the policy would have applied to African-American and Caucasian employees alike. Thus, Giles' claim fails also on the fourth prong, as there is no evidence of disparate treatment.

Likewise, Giles alleges that the requirement to mark in and out of the Communications office on a dry erase board amounted to discrimination against him. However, this claim also fails on the fourth prong as the record does not indicate that Giles was treated less favorably than non-African American employees in the division: all sergeants were required to comply with this policy. Furthermore, even if Giles were able to establish a prima facie case of discrimination for this claim, the City has rebutted it by offering legitimate non-

10

No. 12-10983

discriminatory reasons for the policy; namely, to ensure that divisional sergeants knew where their colleagues were, to avoid leaving a sergeant alone in the radio room without assistance from his colleagues, and to better coordinate lunch breaks. As Giles has not demonstrated that these reasons are unworthy of credence, or that a discriminatory reason more likely motivated the City, this claim also fails as a matter of law.

The City is also able to rebut Giles' claim that the internal affairs investigations into his off-duty work practices amounted to discrimination and retaliation. Here, the record does not indicate whether the other individuals subject to like disciplinary action were also African-American. However, even if Giles were able to establish a prima facie case of discrimination including disparate treatment under the standard, he himself provides the City with a legitimate, non-discriminatory reason for the action in his deposition by acknowledging that he violated the City's policy for off-duty work. At his deposition, upon being shown exhibits detailing the investigation into his missing off-duty work cards, Giles alleged that the cards were "sabotaged," but admitted that his only proof is that he "always" turned them in, and that he had no reason not to do so. Thus, Giles is unable to prove that the City's reasons for suspending him were merely pretextual or unworthy of credence.

Next, Giles also asserts that he was subject to a three-day suspension from work and barred from working off-duty jobs for three months, allegedly on the basis of his race and in retaliation for his IAD complaint. The record, however, shows that both African-American and Caucasian members of his chain of command approved his suspension, and that officers previously investigated for similar infractions were also suspended from work for equally long, or longer, periods of time. Giles thus fails to show that he was subject to disparate treatment based on his race, and this claim fails as a matter of law under *McDonnell Douglas*.

11

No. 12-10983

Finally, Giles makes a number of allegations in his complaint that he did not support with evidence at the summary judgment stage. In his complaint, Giles claims being "talked to harshly," having his supervisory decisions "overturned," enduring disrespect, being called on his cell phone "numerous times" for non-business related matters, having his lunch room privileges denied, being disallowed from supervising Hispanic or Caucasian employees, being unable to discipline a Caucasian employee, and having his restroom privileges denied without supervision, amongst others. However, these claims fail because Giles has not supplied, and the record does not reveal, any specific evidence or facts related to these events that would create a genuine issue for trial. They also fail as a matter of law within the framework of *McDonnell Douglas* because Giles is unable to point to any evidence in the record that his race was a motivating factor in these actions beyond his own subjective belief. *See Byers*, 209 F.3d at 426.

## CONCLUSION

Because Giles failed to produce any evidence that, even in a light most favorable to him, would suggest that the City of Dallas discriminated or retaliated against him on the basis of his race, we affirm the district court's order granting summary judgment.