# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60116

United States Court of Appeals
Fifth Circuit

**FILED**
March 27, 2020

Lyle W. Cayce
Clerk

KENNETH M. JONES,

Plaintiff – Appellee,

v.

THE MISSISSIPPI SECRETARY OF STATE DELBERT HOSEMANN, Individually and in His Official Capacity; CARLA THORNHILL, Individually and in Her Official Capacity; DOUG DAVIS, Individually and in His Official Capacity; KIM TURNER, Individually and in Her Official Capacity,

Defendants – Appellants.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-281

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

PER CURIAM:*

Kenneth Jones worked for the Mississippi Secretary of State before being denied a promotion and ultimately terminated. He challenged both adverse employment decisions. In relevant part, the district court denied the defendants' motion to dismiss Jones's claims under 42 U.S.C. § 1983. Three individual defendants appealed. We reverse.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60116

I.

Jones is an African-American man who worked as a Lobbying Compliance Officer for the Mississippi Secretary of State. After working there for nearly ten years, he applied to become the Director of Compliance. He interviewed but was told he was not the "right fit." The person hired was white and had significantly less career experience and education.

Jones filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC found there was reasonable cause to believe that the Secretary of State's office violated Title VII of the Civil Rights Act. Within a couple months of the EEOC's determination, someone reported that Jones violated the Secretary of State's office policy by being in the building after hours. An investigation ensued, and Jones was fired. He subsequently brought this suit.

In Jones's complaint, he alleged that defendants Doug Davis, Kim Turner, and Carla Thornhill—all employees in the Secretary of State's office—"conspired, colluded, and collaborated to deny" him the promotion. Additionally, Jones said that the investigation into his violation of office policy was "pre-textual" and that his eventual termination was retaliation for his EEOC complaint. Jones brought several claims against the Mississippi Secretary of State, the Secretary of State's office, and the three employees (Davis, Turner, and Thornhill).

The defendants filed a motion to dismiss, which the district court granted in part and denied in part. The district court allowed the following claims to proceed: (1) Jones's claims against the Secretary of State's office for employment discrimination and retaliation under Title VII of the Civil Rights Act; (2) Jones's claims against the three individual employees for racially discriminatory contracting practices under 42 U.S.C. § 1981; and (3) Jones's

2

No. 19-60116

constitutional claims alleging that the three individual employees violated his First and Fourteenth Amendment rights, *see* 42 U.S.C. § 1983.

The three individual defendants appeal only the district court's denial of their motion to dismiss Jones's § 1983 claims. Since the defendants raised the defense of qualified immunity, we have jurisdiction to review the court's rulings on the § 1983 claims de novo. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). We express no view on Jones's Title VII or § 1981 claims.

## II.

On appeal, the individual defendants do not allege that the district court erred in applying the familiar two-step framework to assess qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Instead, the employees argue that Jones's complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* FED. R. CIV. P. 8(a)(2).

When appellants argue that a plaintiff has failed to state a claim for relief as required by Federal Rule of Civil Procedure 8(a)(2), the "sufficiency of [plaintiff's] pleadings is both inextricably intertwined with and directly implicated by the qualified-immunity defense." *Iqbal*, 556 U.S. at 673 (internal quotation marks and citations omitted). We must "tak[e] note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert the defense of qualified immunity." *Id.* at 675. Jones failed to carry his burden here.

## A.

First, Jones argues that the three employees violated the Fourteenth Amendment by unconstitutionally discriminating against him on account of his race. We have analogized § 1983 discrimination claims made by public employees (like Jones) to similar claims made under Title VII. *See Lauderdale*

No. 19-60116

*v. Tex. Dep't. of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). In doing so, we have stated that invidious discriminatory intent can be shown in the same way under § 1983 as under Title VII—by either direct or circumstantial evidence. *See Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 961–62 (5th Cir. 1981); *Giles v. City of Dallas*, 539 F. App'x 537, 543 (5th Cir. 2013) (per curiam).

Both Jones and the district court proceeded on the assumption that his claim would be akin to a Title VII circumstantial evidence claim. And to make such a claim, a plaintiff would need to show that "he (1) was a member of a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) received less favorable treatment than similarly situated individuals outside of his protected group." *Giles*, 539 F. App'x at 543. So, proceeding on the assumption that Jones's claim against the individual employees was just like a Title VII claim, the district court denied the employees' motion to dismiss because Jones's complaint contains allegations along these Title VII lines.

But Title VII and § 1983 are different in at least one important way. *See, e.g.*, *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018) (per curiam). Critically, "[u]nlike Title VII, § 1983 applies to individuals." *Id*. at 640. And since § 1983 applies to individuals, we must be keenly aware of what § 1983 requires before plaintiffs can seek relief from individuals—namely individual causation. *See id*.

In a § 1983 claim, the Supreme Court has told us that "a plaintiff must plead that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); *see id*. at 683 (holding that defendants cannot be held liable "unless they themselves *acted on account of* a constitutionally protected characteristic" (emphasis added)). Only when those individual actions "proximately cause[]" the plaintiff's injury can that plaintiff seek relief under

4

No. 19-60116

§ 1983. *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548 (2017) (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)); *see also Sims*, 894 F.3d at 639 (noting that "individual liability for a government official who violates constitutional rights . . . turns on traditional tort principles of 'but-for' causation").

Requiring a plaintiff to plead individual causation in § 1983 suits makes sense. After all, § 1983 "create[d] a species of tort liability." *Heck*, 512 U.S. at 483 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)). The Supreme Court routinely looks to "the common law of torts," *id.*, to "determine the elements of, and rules associated with, an action seeking damages for [a constitutional] violation." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). And it goes without saying that a fundamental element of common-law torts is causation. *See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013) ("Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim.").[1] It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.

Thus, while the prima facie elements of a Title VII claim may establish an *employer*'s liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of the *individual defendant* caused the harm. *Sims*, 894 F.3d at 641 ("That individual liability turns on traditional tort principles of whether the particular act was a 'causal link' in the

---

[1] The Supreme Court has articulated different ways that plaintiffs must "plead and prove" the "causal connection" for different constitutional harms. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). But the requirement of pleading and eventually proving causation in § 1983 endures. *See id.* at 1723 (discussing how different cases account for the "problem of causation").

5

termination."); c*f. Iqbal*, 556 U.S. at 676 ("[Plaintiffs] must plead and prove that the *defendant[s] acted* with discriminatory purpose." (emphasis added)); *Lee*, 634 F.2d at 960 ("[Plaintiff] alleges that defendants Conecuh County Board of Education, its members, and the Superintendent of Schools . . . repeatedly fail[ed] to promote him to a principalship because of his race.").[2]

Turning now to Jones's complaint, it is plainly inadequate under § 1983 because he does not make any allegations about the particular actions of the individual employees. Jones states that he interviewed for a promotion and "that he was not selected for the job." But he does not allege that the three individual employees were the ones who interviewed him, rejected him, or selected someone else for the job. Instead, Jones uses the passive voice and says that a "white male" with fewer qualifications and less experience "was ultimately hired." Jones also alleges that "[t]he only reason given for his non-selection was that he was not the 'right fit.'" But Jones does not allege that any of the three individual employees gave this allegedly false reason.

The one allegation Jones does include is that the three individual employees "conspired, colluded, and collaborated to deny" him the promotion. But as the Supreme Court counseled in *Twombly*, the "naked assertion of conspiracy" without "factual enhancement" is generally inadequate. 550 U.S. at 557. By not alleging any particular actions taken by the individual defendants, Jones has failed to adequately state a § 1983 race-discrimination claim upon which relief can be granted. FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 676.

---

[2] We respectfully disagree with the dissenting opinion's view that the rule of orderliness compels a different result. We are simply following the Supreme Court's command that a § 1983 complaint must include allegations that each individual defendant, through "th[at] official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And the dissent's own authorities appear consistent with that rule; in each case, the defendant was alleged to have personally caused a constitutional harm.

No. 19-60116

B.

Second, Jones brings a First Amendment retaliation claim under § 1983. To successfully bring such a claim as a public employee, Jones must show "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015). And since this is a § 1983 claim against individual defendants, Jones must plead that the individual defendants' "animus against [his] exercise of First Amendment rights is a link in the causal chain that [led] to [his] firing." *Sims*, 894 F.3d at 639; *cf. Nieves*, 139 S. Ct. at 1722 ("To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." (internal quotation marks omitted)).

Jones pleaded that after he lost out on the promotion, he filed a claim with the EEOC. The EEOC began investigating. But then someone reported Jones for being in the Secretary of State's office building too late. So, the three individual defendants "initiated an investigation into the reason why [he] was in the building after hours." Jones claims this investigation was "a pre-textual means" to fire him because the defendants "were aware" of the real reason he was in the office after hours.

Additionally, Jones claims that on October 11, 2017, the EEOC officially concluded its review and denied the Secretary of State's request for reconsideration. The very next day, October 12, Jones received a notice that the Secretary of State's office intended to discipline him. On October 24, the three individual defendants held a hearing, and Jones was fired on October 30. He claims this was "in retaliation for his filing of [his] EEOC claim." Again, we express no view on whether Jones stated a claim under Title VII.

No. 19-60116

The issue before us is whether the individual defendants violated the First Amendment by firing him based on an alleged "animus" toward his First Amendment activity (the filing of his EEOC claim). And on that question, Jones alleges nothing. Though the district court seemed to find the sequencing of events leading up to his firing sufficient, that allegation alone is not enough in this case to infer that *each individual defendant* acted with a retaliatory "state of mind." *Iqbal*, 556 U.S. at 683; *cf. Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997). As a result, the sequencing is "merely consistent with" the defendants' liability, but "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

His other allegations similarly fall short. In order to survive a motion to dismiss, Jones needed to do more than use "labels and conclusions" or "a formulaic recitation of the elements of [his] cause of action." *Twombly*, 550 U.S. at 555. But all Jones alleges is that the individual defendants acted with "pretext" and "in retaliation." Those are purely legal conclusions. Jones does not add "factual content" to these allegations, such as his alleged real reason for being in the office after hours, why defendants would have known this real reason, or any other indicia of the defendants' animus. *Iqbal*, 556 U.S. at 678. Such factual content could allow the court to "infer more than the mere possibility of misconduct" by the defendants. *Id.* Instead, Jones's complaint is "[t]hreadbare." *Id.* The Federal Rules of Civil Procedure demand more. *Id.*

\* \* \*

The district court's denial of the motion to dismiss Jones's § 1983 claims is REVERSED.

No. 19-60116

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

Because the majority opinion deviates from this court's precedent by announcing a new standard for sufficiently pleading a § 1983 claim—in contravention of the rule of orderliness—I must respectfully dissent.

\*     \*     \*

We have held on numerous occasions that the elements of a *prima facie* case of employment discrimination under § 1983 are the same as those under Title VII. *E.g.*, *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) ("[A]lthough Mitchell's wage-discrimination claim was brought under § 1983, his claim should be analyzed under the doctrinal framework applicable to wage-discrimination cases brought under Title VII."); *Giles v. City of Dallas*, 539 F. App'x 537, 543 (5th Cir. 2013) ("In adjudicating Title VII claims of racial discrimination, we apply the . . . same framework [as we do] in adjudicating claims brought under . . . §§ 1981 and 1983 alleging racial discrimination in violation of the Equal Protection Clause."); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 491 (5th Cir. 2011) ("Because a claim of racial discrimination under Section 1983 is essentially the same as such a claim brought under Title VII, our analysis with respect to [the plaintiff's] discrimination and retaliation claims applies with equal force to both causes of action.") (internal quotation marks omitted); *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) ("Section 1983 and [T]itle VII are parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.") (internal quotation marks and citations omitted); *Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984) ("We have held that when section 1983 is used as a parallel remedy with Title VII in a racial discrimination suit the elements of a cause of action are the same under both statutes . . . .") (internal quotation marks omitted); *Lee v. Conecuh Cty Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir.

Jan. 1981) (holding that for § 1983 cases alleging racially motivated employment discrimination, pleading the elements of a Title VII claim "represent *one means* by which a plaintiff may establish a prima facie case") (emphasis added); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980) ("Insofar as [§ 1983] is used as a parallel remedy for transgression of section 1981 and . . . Title VII rights, the elements of the causes of action do not differ from those [applicable to a Title VII suit]."); *see also Sorlucco v. N.Y.C. Police Dep't*, 888 F.2d 4, 7 (2d Cir. 1989) (explaining that "[i]n a claim arising under Title VII or section 1983, a plaintiff . . . has the initial burden of establishing a prima facie case of discrimination" and that "[s]he may satisfy this burden by" pleading the Title VII elements); *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (listing the elements of a Title VII case and noting that "[t]he inquiry into intentional discrimination is essentially the same for individual actions brought under §§ 1981 and 1983"); *Matory v. Mason*, No. 3:16-CV-989, 2018 WL 6493874, at \*5 (S.D. Miss. Dec. 10, 2018) ("When a plaintiff brings claims under Title VII and § 1983 premised on the same set of facts, the court evaluates both claims under the standard governing Title VII actions.").[1]

The district court determined that Jones had adequately met the pleading threshold for his § 1983 claim based on his allegations establishing the Title VII elements. Indeed, the defendants conceded that Jones had properly perfected his Title VII claim against the Mississippi Secretary of

---

[1] Under our settled precedent, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). But the majority opinion does not indicate that an intervening Supreme Court decision or 5th Circuit *en banc* decision has overturned this court's well-established rule that a court evaluates a § 1983 claim under the same standard governing Title VII actions.

No. 19-60116

State, further suggesting that Jones had adequately pled his § 1983 claims. That is not good enough for the majority opinion, however. Apparently, in addition to the Title VII elements, Jones needed to specifically plead which actions of the individual defendants caused him harm—an individual-causation requirement, as the majority opinion styles it. But none of the cases mentioned above say anything about individual causation. In *Whiting v. Jackson State University*, for example, which involved Title VII, § 1981, and § 1983 claims against a university and its president, this court walked through each of the Title VII elements—and only those elements—and concluded that the plaintiff had established a *prima facie* case under Title VII. 616 F.2d at 124. "Consequently," it held, "section 1983 relief for an equal protection violation is appropriate . . . ." *Id.*

As support for its new addition, the majority opinion cites to our decision in *Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018). That case, however, says nothing about grafting an entirely new individual-causation requirement onto the Title VII elements when evaluating a § 1983 claim. *Sims* mentioned Title VII only with regard to explaining the cat's paw theory of imputed liability, the idea that in the workplace context, the employer may be liable for the animus of a supervisor not charged with making final employment decisions. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). This is what we said in *Sims*:

> [Other cases] have mistakenly characterized the question as whether the nondecisionmaker can be liable under a cat's paw theory of imputed liability. That turns cat's paw liability on its head, and is another example of relying on the law of employer liability for a question of employee liability. As "cat's paw" liability arose under Title VII in which only employers can be liable, it is not about the liability of individual employees. It is instead about whether the employers who are subject to Title VII liability can be held liable by imputing to those entities the unlawful motives of employees who are not final decisionmakers. Unlike Title VII,

11

section 1983 applies to individuals. So the question is not whether the metaphorical paw . . . is liable for carrying out the ill-motivated actions of the metaphorical cat . . .; it is whether the cat itself can be liable for having unlawful motives that caused the firing. That individual liability turns on traditional tort principles of whether the particular act was a "causal link" in the termination.

*Sims*, 894 F.3d at 640–41 (internal citations and emphasis omitted).

*Sims* referenced Title VII and causation only with respect to addressing the proper use of cat's paw liability. Though causation is relevant to the § 1983 analysis, *Sims* in no way overturns decades of Fifth Circuit precedent establishing that a § 1983 plaintiff need plead only the Title VII elements to sufficiently state a claim.

Even if, assuming *arguendo*, individual causation is a further element in the Title VII scheme—an element that has seemingly gone unidentified by this court for more than thirty years—Jones has adequately pled the individuals' link to his termination. According to his complaint, the three individuals knew the reason for Jones's being in the office after hours, yet they pursued an investigation anyway. He alleges that the investigation was simply pretext for his subsequent firing. Moreover, Jones received notice that the disciplinary committee—headed by the three individual defendants—was proceeding with a hearing the very day after the EEOC denied the Secretary of State's request for reconsideration of the agency's determination that reasonable cause existed to believe that Jones had been discriminated against. At the hearing, Jones was fired, which he contends was in retaliation for his filing of the EEOC claim.

If not for the defendants' instigation of the investigation, Jones arguably would not have been fired. That adequately ties the defendants to his termination. *See id.* at 641 ("That individual liability turns on traditional tort principles of whether the particular act was a 'causal link' in the termination."). For that reason, the majority opinion's citation to *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009), is similarly unpersuasive. It notes the uncontroversial proposition that defendants cannot be held liable "unless they themselves acted on account of a constitutionally protected characteristic." *See Iqbal*, 556 U.S. at 683. But Jones has pleaded that the three defendants *did* act on account of a constitutionally protected characteristic. His evidence? They sought his termination by initiating an investigation into an after-hours violation—a violation for which Jones had provided an explanation—and only proceeded with a disciplinary hearing after receiving notice that the EEOC denied the Secretary of State's request for reconsideration. Jones was informed that disciplinary action could result in a "written reprimand, suspension without pay, demotion, or termination." Out of those four options, the defendants chose termination.

As the district court noted, this is only the motion-to-dismiss stage. My belief that Jones has done enough, *at this stage*, to "nudge[] [his] claims . . . across the line from conceivable to plausible," *id.* at 680 (second alteration in original), says nothing about Jones's ability to succeed at summary judgment or at trial. And all of this is ignoring the fact that our case law does not even demand the pleading of a causation requirement in the first place.

Finally, even if Jones failed to plausibly plead causation, the proper remedy would be remand, not dismissal. The majority opinion has articulated a new rule: a § 1983 plaintiff must plead individual causation in addition to the normal Title VII elements. In such a circumstance, Jones should have the opportunity to meet this new standard by filing an amended complaint. Otherwise, we would be punishing a plaintiff for rightly following decades of our precedent. Because of that and the foregoing reasons, I respectfully dissent.