ACCEPTED
15-25-00089-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/22/2025 12:05 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00089-CV

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

FILED
15th COURT OF APPEALS
AUSTIN, TEXAS
9/22/2025 12:05:38 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS DEPARTMENT OF AGRICULTURE, ET AL.,

*Appellants*,

*v.*

BE A CHAMPION, INC., JAMES HONG, KEVIN KLOTZ, GEORGE MOON, AND JARON BARGANIER,

*Appellees.*

On Appeal from the
200th Judicial District Court, Travis County

## APPELLANTS' REPLY BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief for General Litigation Division

TODD DICKERSON
Assistant Attorney General
Texas Bar No. 24118368

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 228-7289 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov

# TABLE OF CONTENTS

Table of Contents...........................................................................................................ii

Index of Authorities..................................................................................................... iv

Introduction .................................................................................................................. 1

Argument....................................................................................................................... 1

I.      Plaintiffs' *Ultra Vires* Arguments Are Flawed................................................. 1

     A.      Binding precedent shows that Plaintiffs cannot sue uninvolved apex representatives. ................................................. 1

     B.      Plaintiffs abandoned many of their *ultra vires* claims. ........................ 1

     C.      Plaintiffs did not distinguish this case from *Image API*. ...................... 1

     D.      Plaintiffs cannot avoid an *ultra vires* inquiry by invoking *M.A.L.* ................................................................................................. 2

II.      Plaintiffs Did Not Establish Standing Or The *Ex Parte Young* Exception. ................................................................................................. 4

     A.      Plaintiffs had to, but did not, establish standing to sue each Defendant. ............................................................................... 4

     B.      Plaintiffs' standing arguments for their *ultra vires* claim are flawed. ..................................................................................... 8

     C.      Plaintiffs waived their standing arguments. ........................................ 9

     D.      Plaintiffs did not establish the *Ex parte Young* exception. ................... 10

III.      Plaintiffs Did Not Affirmatively Demonstrate A Viable Property-Based Due Course Of Law Claim. ............................................... 11

     A.      Plaintiffs' arguments for a protected interest run contrary to significant precedent.............................................................. 11

         1.      The Fifth Circuit rejected Plaintiffs' argument that requiring "consultation" with another entity is a substantive limit on discretion. ......................................... 11

         2.      Plaintiffs' arguments are irrelevant and foreclosed by binding precedent. ......................................................... 12

         3.      *Grounds* and *Teeuwissen* do not support Plaintiffs' position.......................................................................... 15

B. Plaintiffs did not show a deprivation of their procedural due process rights. ..................................................... 16

IV. Plaintiffs Did Not Affirmatively Demonstrate A Viable Stigma-Plus Claim: They Received Constitutionally Sufficient Process, And They Did Not Establish A False Publication. ...................... 17

V. Plaintiffs Did Not Affirmatively Demonstrate A Viable Substantive Due Course Of Law Claim. ....................................... 20

A. Plaintiffs lack a protected property interest, and they did not apply the right test for analyzing their "stigma-plus" interest. ................................................................................... 20

B. Plaintiffs' arguments concern procedural, not substantive, due process, and they did not allege sufficiently arbitrary conduct. .............................................. 21

VI. Plaintiffs Did Not Affirmatively Demonstrate A Viable Equal Protection Claim. ...................................................................... 23

A. Plaintiffs' equal protection claim rests on legal conclusions. ............................................................................ 23

B. This Court should follow the seemingly universal precedent holding that a class-of-one theory does not apply in the government-contractor context. ........................ 25

VII. The Redundant Remedies Doctrine Bars Plaintiffs' Request To Reverse TDA's Order. ................................................................. 26

VIII. Plaintiffs Did Not Affirmatively Demonstrate A Viable Takings Claim. ................................................................................. 27

A. Plaintiffs did not show a deprivation of a protected property interest. .................................................................. 27

B. Plaintiffs ignored the Texas Supreme Court's test for finding a "public use." ............................................................ 27

C. TDA acted under its colorable contract rights when it terminated Champion's contract pursuant to the contract's terms. ..................................................................... 28

Prayer ........................................................................................................... 29

Certificate of Service .................................................................................. 30

Certificate of Compliance ........................................................................... 31

# INDEX OF AUTHORITIES

Cases

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ............................................................................... 7, 8

*Andrade v. NAACP of Austin*,
345 S.W.3d 1 (Tex. 2011) ........................................................................................ 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 24

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) ................................................................................ 10

*Brice v. Tex. Dep't of Family & Protective Services*,
No. 14-20-00506-CV, 2022 WL 1310876 (Tex. App.—Houston [14th
Dist.] May 3, 2022, no pet.) .................................................................................. 4

*Bustos v. Bexar Appraisal Dist.*,
No. 04-19-00781-CV, 2021 WL 2118373 (Tex. App.—San Antonio
May 26, 2021, pet. denied) ..................................................................................... 4

*California v. Tex.*,
593 U.S. 659 (2021) ................................................................................................. 5

*City of Dallas v. Jones*,
331 S.W.3d 781 (Tex. App.—Dallas 2010, pet. dism'd) .............................. 24, 25

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ............................................................................. 3, 4

*City of Elsa v. M.A.L.*,
226 S.W.3d 390 (Tex. 2007) ............................................................................. 2, 3

*City of Houston v. State Farm Mut. Auto. Ins. Co.*,
712 S.W.3d 707 (Tex. App.—Houston [14th Dist.] 2025, no pet.) ............. 23, 24

*Colorado Outfitters Ass'n v. Hickenlooper*,
823 F.3d 537 (10th Cir. 2016) .............................................................................. 9

*Daves v. Dallas Cnty., Tex.*,
22 F.4th 522 (5th Cir. 2022) .................................................................................. 6

*E.T. v. Paxton*,
41 F.4th 709 (5th Cir. 2022) ................................................................................. 9

*Econ. Dev. Corp. of Dade Cnty., Inc. v. Stierheim*,
782 F.2d 952 (11th Cir. 1986) ................................................................... 13, 14, 16

*Ellias v. Phoenix Life Ins. Co.*,
501 Fed. Appx. 478 (6th Cir. 2012) ............................................................... 9

*Estate of Angel Place v. Anderson*,
No. 19-1269, 2022 WL 1467645 (10th Cir. May 10, 2022) ........................... 23

*Fass v. Benson*,
No. 05-21-00799-CV, 2023 WL 3860441 (Tex. App.—Dallas June 7,
2023, no pet.) ................................................................................................. 21

*Gates v. Tex. Dep't of Family & Protective Services*,
No. 03-11-00363-CV, 2013 WL 4487534 (Tex. App.—Austin Aug. 15,
2013, pet. denied) ............................................................................................ 4

*Gen. Services Comm'n v. Little-Tex Insulation Co., Inc.*,
39 S.W.3d 591 (Tex. 2001) ............................................................................ 29

*Giles v. City of Dallas*,
539 Fed. Appx. 537 (5th Cir. 2013) .............................................................. 25

*Grounds v. Tolar Indep. Sch. Dist.*,
856 S.W.2d 417 (Tex. 1993) .......................................................................... 15

*Harris v. City of Houston*,
151 F.3d 186 (5th Cir. 1998) ........................................................................... 9

*Hartnett v. Pennsylvania State Educ. Ass'n*,
963 F.3d 301 (3d Cir. 2020) ............................................................................ 9

*Haverkamp v. Linthicum*,
6 F.4th 662 (5th Cir. 2021) ......................................................................... 5, 6

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012) ............................................................................ 7

*Henderson v. Sotelo*,
761 F.2d 1093 (5th Cir. 1985) ....................................................................... 11

*Honors Acad., Inc. v. Tex. Educ. Agency*,
555 S.W.3d 54 (Tex. 2018) ............................................................................ 20

*Hughes v. City of Garland*,
204 F.3d 223 (5th Cir. 2000) ................................................................17, 18, 21

*Image API, LLC v. Young*,
691 S.W.3d 831 (Tex. 2024) ........................................................................ 1, 2

*In re First Reserve Mgmt., L.P.*,
671 S.W.3d 653 (Tex. 2023) .......................................................................... 25

*In re G.C.,*
66 S.W.3d 517 (Tex. App.—Fort Worth 2002, no pet.)...............................................22

*Kansas Penn Gaming, LLC v. Collins,*
656 F.3d 1210 (10th Cir. 2011) ..................................................................................24

*KMS Retail Rowlett, LP v. City of Rowlett,*
593 S.W.3d 175 (Tex. 2019) .......................................................................................28

*Laufer v. Mann Hosp., L.L.C.,*
996 F.3d 269 (5th Cir. 2021) ........................................................................................5

*Logan v. Zimmerman Brush,*
455 U.S. 422 (1982) ....................................................................................................14

*Martinez v. Tex. Dep't of Protective & Regulatory Services,*
116 S.W.3d 266 (Tex. App.—El Paso 2003, pet. denied)..........................................22

*Matagorda Cnty. Hosp. Dist. v. Burwell,*
189 S.W.3d 738 (Tex. 2006) ..................................................................................12, 16

*Matzen v. McLane,*
659 S.W.3d 381 (Tex. 2021) .......................................................................................19

*McGuire v. Indep. Sch. Dist. No. 833,*
863 F.3d 1030 (8th Cir. 2017) ...............................................................................13, 16

*Meyers v. JDC/Firethorne, Ltd.,*
548 S.W.3d 477 (Tex. 2018) .........................................................................................5

*Monell v. Dep't of Soc. Services of City of New York,*
436 U.S. 658 (1978) ......................................................................................................7

*Murthy v. Missouri,*
603 U.S. 43 (2024) .....................................................................................................5, 8

*NetworkIP, LLC v. F.C.C.,*
548 F.3d 116 (D.C. Cir. 2008) .....................................................................................9

*Paul v. Davis,*
424 U.S. 693 (1976) ....................................................................................................20

*Reynoso v. Dibs US, Inc.,*
541 S.W.3d 331 (Tex. App.—Houston [14th Dist.] 2017, no pet.)............................23

*Ristow v. Hansen,*
719 Fed. Appx. 359 (5th Cir. 2018)............................................................................21

*Rountree v. Dyson,*
892 F.3d 681 (5th Cir. 2018) ......................................................................................24

*Smith v. Dist. Attorney Office for Wood Cnty.*,
No. 03-13-00220-CV, 2014 WL 5420536 (Tex. App.—Austin Oct. 24, 2014, pet. denied)..................................................................................... 4

*Speech First, Inc. v. McCall*,
138 F.4th 219 (5th Cir. 2025) ............................................................8, 9

*State v. Holland*,
221 S.W.3d 639 (Tex. 2007) ...........................................................28, 29

*State v. Menchaca*,
No. 13-16-00602-CV, 2018 WL 897980 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2018, pet. denied) ......................................................... 4

*Steinberg v. D.C.*,
901 F. Supp. 2d 63 (D.D.C. 2012) ....................................................... 23

*Sturm v. U.S. Dep't of Navy*,
76 Fed. Appx. 833 (9th Cir. 2003) ......................................................... 9

*Teeuwissen v. Hinds Cnty. Mississippi, by & through its Bd. of Supervisors*,
78 F.4th 166 (5th Cir. 2023) ..........................................................15, 16

*Tex. Dep't of State Health Services v. Crown Distrib. LLC*,
647 S.W.3d 648 (Tex. 2022) ...........................................................14, 15

*Tex. Health & Human Services Comm'n v. Guajardo*,
No. 03-09-00521-CV, 2010 WL 5129111 (Tex. App.—Austin Dec. 14, 2010, no pet.).......................................................................................... 4

*Tex. State Bd. of Pharmacy v. Seely*,
764 S.W.2d 806 (Tex. App.—Austin 1988, writ denied) ........................... 26

*Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*,
653 S.W.3d 227 (Tex. App.—Austin 2022, no pet.) ................................ 27

*Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*,
136 S.W.3d 643 (Tex. 2004) ............................................................... 21

*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023) ............................................................... 10

*Van Overdam v. Tex. A&M Univ.*,
No. 4:18-CV-02011, 2024 WL 115229 (S.D. Tex. Jan. 10, 2024)............... 9

*Vasquez v. Legend Nat. Gas III, LP*,
492 S.W.3d 448 (Tex. App.—San Antonio 2016, pet. denied) ................... 23

*Wallace v. Robinson*,
  940 F.2d 243 (7th Cir. 1991) ....................................................................... 16

*White v. Thomas*,
  660 F.2d 680 (5th Cir. 1981) ....................................................................... 20

*Williams v. Davis*,
  No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) .................................. 6

<u>Statutes</u>

Tex. Agric. Code § 12.0025 ............................................................................ 26

<u>Regulations</u>

7 C.F.R. § 226.15(e) ...................................................................................... 22

7 C.F.R. § 226.6(b) ........................................................................................ 11

7 C.F.R. § 226.6(c) ........................................................................................ 22

<u>Other Authorities</u>

89 FR 13151 .................................................................................................... 2

On response, Plaintiffs overlooked significant (often binding) precedent contrary to their position, stretched their cases beyond their obvious holdings, made statements that are unsupported by their factual allegations, and committed various other errors. As Defendants will show, Plaintiffs' arguments do not change the conclusion that this Court should reverse the lower court's decision.

## ARGUMENT

## I. Plaintiffs' *Ultra Vires* Arguments Are Flawed.

### A. Binding precedent shows that Plaintiffs cannot sue uninvolved apex representatives.

Defendants explained that binding precedent forecloses Plaintiffs' claims against Defendants Miller and Keel as they are nominal apex representatives with no alleged involvement in the supposed unlawful acts.[1] Plaintiffs ignored this issue on response.

### B. Plaintiffs abandoned many of their *ultra vires* claims.

Defendants argued that the following claims do not qualify for the *ultra vires* exception: (1) TDA's serious deficiency determination; (2) the rejection of Champion's corrective action plan; and (3) and the termination of Champion's CACFP agreement.[2] Plaintiffs did not respond to these points.

### C. Plaintiffs did not distinguish this case from *Image API*.

Plaintiffs' arguments on the "logically necessary relief" issue fail for two reasons.

---

[1] Appellants' Br, 35.
[2] *Id.* at 25–27; CR.128–29, ¶ 148.

First, they contended that *Image API* is distinguishable as the contractor there "did not object to the audit . . . or the results of that audit."[3] But in *Image API*, the Texas Supreme Court specified that a logically necessary analysis focuses on the law's *text*.[4] Plaintiffs' distinction is irrelevant as it does not turn on a textual analysis.

Second, Plaintiffs cited the following line from the federal register to support their arguments: "The current CACFP serious deficiency process at 7 CFR 226.6(c) includes procedures to help the State agency document the case to terminate and disqualify non-performing CACFP institutions that are unwilling to or incapable of resolving their serious deficiencies."[5] But this sentence states that the rules are designed to "help" agencies like TDA "document the case" against a participant. Thus, it does not support Plaintiffs' position that their request to void TDA's termination decision due to an alleged procedural error is logically *necessary* to effectuate the purpose of these procedures.[6]

### D. Plaintiffs cannot avoid an *ultra vires* inquiry by invoking *M.A.L.*

Plaintiffs cited *City of Elsa v. M.A.L.* to argue that they can sue TDA and the official-capacity Defendants for injunctive relief for alleged constitutional violations without establishing the *ultra vires* exception (or some other waiver) to sovereign

---

[3] Appellees' Br., 16.
[4] *Image API, LLC v. Young*, 691 S.W.3d 831, 843 (Tex. 2024) (brackets and quotations omitted).
[5] 89 FR 13151.
[6] *See Image API, LLC*, 691 S.W.3d at 843 (explaining that the test is whether a consequence is "'logically *necessary*' to give effect to statute," not whether the consequence is *reasonable*).

immunity.[7] There are four problems with Plaintiffs' argument.

First, *M.A.L.* did not involve claims against government employees in their official capacities.[8] And Plaintiffs cited no authority extending *M.A.L.* to such defendants.

Second, *M.A.L.* does not absolve Plaintiffs of having to establish that their requested relief is "logically necessary" to give effect to the CACFP's regulations.

Third, to overcome sovereign immunity, a plaintiff must assert "viable" constitutional claims.[9] Plaintiffs' claims are not viable, as shown in Defendants' opening brief and this reply.

Finally, *M.A.L.* is irreconcilable with the Texas Supreme Court's later decision in *City of El Paso v. Heinrich.* There, the Court stated that the *ultra vires* exception to sovereign immunity applies to "suits to require state officials to comply with statutory *or constitutional* provisions."[10]

The Court also found that "the governmental entities themselves . . . remain immune from suit."[11] This is because the *ultra vires* exception is premised on the idea that the "acts of officials which are not lawfully authorized are not acts of the State."[12] Thus, "it follows that these suits cannot be brought against the state, which retains

---

[7] Appellees' Br., 12.
[8] *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007).
[9] *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011).
[10] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (emphasis added).
[11] *Id.* at 372–73.
[12] *Id.* at 373 (quotations omitted).

immunity, but must be brought against the state actors in their official capacity."[13]

Plaintiffs' claims arising under the Texas Constitution's due process and equal protection provisions (along with their actual *ultra vires* claim) fit neatly under the *ultra vires* rubric. These claims center on the notion that the Texas Constitution forbade TDA employees' acts concerning the termination of Champion's CACFP agreement, and thus they lacked lawful authority to engage in these acts.[14] Courts have had little trouble finding that similar constitutional claims for equitable relief must satisfy the *ultra vires* requirements set forth in *Heinrich*.[15] This Court should reach the same conclusion.

## II. Plaintiffs Did Not Establish Standing Or The *Ex Parte Young* Exception.

### A. Plaintiffs had to, but did not, establish standing to sue each Defendant.

Plaintiffs contended that a party harmed by a government entity has standing to sue *every* employee of that entity in their official capacities, regardless of their

---

[13] *Id.*

[14] *See* CR.119–28, ¶¶ 115–45.

[15] *See, e.g., Brice v. Tex. Dep't of Family & Protective Services*, No. 14-20-00506-CV, 2022 WL 1310876, at *1–2 (Tex. App.—Houston [14th Dist.] May 3, 2022, no pet.) (stating that an *ultra vires* claim against the Texas Department of Family and Protective Services for alleged constitutional violations "would be barred by sovereign immunity"); *Bustos v. Bexar Appraisal Dist.*, No. 04-19-00781-CV, 2021 WL 2118373, at *3 (Tex. App.—San Antonio May 26, 2021, pet. denied) (finding that the plaintiff's claim arising from an alleged violation of his constitutional rights "cannot be brought against the governmental entity itself and must instead be brought against governmental officials"); *see also State v. Menchaca*, No. 13-16-00602-CV, 2018 WL 897980, at *2–3 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2018, pet. denied); *Smith v. Dist. Attorney Office for Wood Cnty.*, No. 03-13-00220-CV, 2014 WL 5420536, at *2 n.2 (Tex. App.—Austin Oct. 24, 2014, pet. denied); *Gates v. Tex. Dep't of Family & Protective Services*, No. 03-11-00363-CV, 2013 WL 4487534, at *4–6 (Tex. App.—Austin Aug. 15, 2013, pet. denied); *Tex. Health & Human Services Comm'n v. Guajardo*, No. 03-09-00521-CV, 2010 WL 5129111, at *7 (Tex. App.—Austin Dec. 14, 2010, no pet.).

involvement in the unlawful acts or their authority to redress the injury.[16] The caselaw cuts against this argument.

The U.S. Supreme Court has cautioned against "treating . . . defendants . . . as a unified whole."[17] Thus, a "plaintiff must demonstrate standing for each claim they press against each defendant."[18] A defendant with no connection to the unlawful acts indicates that the plaintiff's injury is not "fairly traceable to the defendant's alleged unlawful conduct."[19] And redressability is often lacking when the plaintiff fails to show "that the defendant has authority to respond to any requested injunctive relief."[20]

These principles apply even to suits against official-capacity defendants. Take *Haverkamp v. Linthicum*, for instance. There, an inmate in a Texas Department of Criminal Justice prison claimed that TDCJ refused to pay for her sex-reassignment surgery in violation of her equal protection rights.[21] The inmate sought an injunction against a TDCJ director.[22] The Fifth Circuit found that the inmate lacked a justiciable claim to sue the director as there was "no allegation plausibly linking [the director] with the challenged decisions."[23]

---

[16] Appellees' Br., 21–23.

[17] *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

[18] *Id.* (quotations omitted).

[19] *See California v. Tex.*, 593 U.S. 659, 669 (2021).

[20] *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 487–88 (Tex. 2018).

[21] *Haverkamp v. Linthicum*, 6 F.4th 662, 666–67 (5th Cir. 2021).

[22] *Id.* at 665–66.

[23] *Id.* at 671. While the Fifth Circuit based its decision on sovereign immunity, it relied on a case discussing standing for its conclusion. *Id.* (citing *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021)). This makes sense, as the Fifth Circuit has found that its *Ex parte Young* and standing

*Daves v. Dallas Cnty.* is also instructive. There, the plaintiffs sought to enjoin Dallas County's use of bail schedules.[24] Specifically, they argued that Dallas County's district and county judges adopted a bail schedule for misdemeanor arrestees that were then misapplied by subordinate magistrate judges.[25]

The Fifth Circuit did not treat the employees of Dallas County's judicial system as an undifferentiated whole, as Plaintiffs ask this Court to do. Rather, the Fifth Circuit "look[ed] at what the District and County Judges did[] [and] then decided whether the claimed injury is traceable to their actions."[26] The court noted that the plaintiffs' claims turned on magistrate judges misapplying the bail schedules, as opposed to the promulgation of the schedules themself.[27] The court found that the plaintiffs lacked standing to sue the district and county judges as there was no evidence that they should have predicted that the magistrate judges would misapply the bail schedules.[28] The Fifth Circuit reached this conclusion even though it acknowledged that the magistrate judges were "surrogates" of the district and county judges.[29]

Under Plaintiffs' theory, *Haverkamp* and *Daves* were wrongly decided as the official-capacity defendants' mere employment with the harm-causing entity should

---

analyses significantly overlap. *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *3 (5th Cir. Jan. 6, 2023).

[24] *Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 529–30 (5th Cir. 2022).

[25] *Id.* at 530.

[26] *Id.* at 543.

[27] *Id.*

[28] *Id.* at 544.

[29] *Id.* at 543.

have been enough to establish standing. Plaintiffs cited no meaningful support for their position.

Plaintiffs' main case is *Heckman v. Williamson County*,[30] but it is distinguishable. There, the plaintiff was denied his right to counsel by a visiting Williamson County judge.[31] The Texas Supreme Court found standing to sue certain other Williamson County judges as the alleged deprivations "were the result of a custom or practice carried out in the courts of the named defendants."[32]

Yet it is hardly remarkable to say that a defendant can be sued for creating or allowing a custom or policy that was the moving force behind a constitutional violation.[33] It is another thing to throw the rules of traceability and redressability out the window whenever plaintiffs sue employees of the government entity that caused the alleged harm.

Finally, Plaintiffs cited *Air Evac* to argue that any "attenuated" connection between a defendant and the plaintiff's injury effectively creates a justiciable controversy.[34] But the Fifth Circuit's holding does not stretch so far. *Air Evac* merely found standing satisfied because the officials sued set the reimbursement rates that unlawfully capped the plaintiff's ability to recover payments under the program in

---

[30] *See* Appellees' Br., 22–23.

[31] *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 158 (Tex. 2012).

[32] *Id.* at 158.

[33] *See, e.g.*, *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978).

[34] Appellees' Br., 23–24.

question.[35]

Plaintiffs alleged nothing of the sort here. Rather, they cited 17 consecutive pages from their amended petition to contend, in a conclusory fashion, that they adequately pled injuries that are fairly traceable to Defendants.[36] This is just another example of Plaintiffs impermissibly trying to get this Court to decide standing in gross. But again, this Court must focus on whether Plaintiffs "demonstrate[d] standing for each claim that they press against each defendant, and for each form of relief that they seek."[37] They did not make that showing.

### B.  Plaintiffs' standing arguments for their *ultra vires* claim are flawed.

There are three issues with Plaintiffs' standing arguments in support of their *ultra vires* claim. First, they abandoned their request for a declaration that "TDA must specifically identify any purported failures landing Champion on the 'serious deficiency' list."[38]

Second, Plaintiffs relied on *Speech First, Inc v. McCall* for their request for relief that would "provide Champion an opportunity to meaningfully cure [its] serious deficiencies."[39] But that case mainly involved whether a government defendant's

---

[35] *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 511–12, 514 (5th Cir. 2017).

[36] Appellees' Br., 24 (citing CR.103–19, ¶¶ 66–114).

[37] *See Murthy*, 603 U.S. at 61 (quotations omitted).

[38] *See* CR.129, ¶ 151; Appellees' Br., 19–21; Appellants' Br., 33–34 (explaining why Plaintiffs lack standing to seek this relief).

[39] CR.129, ¶ 151; Appellees' Br., 20–21.

voluntary cessation of the alleged unlawful conduct moots a case.[40] It does not support Plaintiffs' claim to *standing*, which is "distinct" from mootness.[41]

Finally, Plaintiffs contended they have standing to assert an *ultra vires* claim because they sought reinstatement.[42] But reviewing their amended petition confirms that Plaintiffs did not request reinstatement as a remedy for their *ultra vires* claim.[43] Plaintiffs' unpled desire to be reinstated does not confer standing for this claim.[44]

### C. Plaintiffs waived their standing arguments.

Plaintiffs argued that, by analyzing standing for "just a few problematic examples," Defendants "waived their standing challenge" for "any other . . . party."[45] Yet the caselaw is clear that arguments *against* standing "cannot be waived," but arguments *in favor* of standing can be.[46]

Plaintiffs admit that briefing standing for each Defendant is necessary to preserve the argument. They did not do so here.[47] Thus, Plaintiffs waived their standing arguments.

---

[40] *Speech First, Inc. v. McCall*, 138 F.4th 219, 223–24 (5th Cir. 2025).

[41] *See, e.g.*, *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020); *Ellias v. Phoenix Life Ins. Co.*, 501 Fed. Appx. 478, 483 (6th Cir. 2012).

[42] Appellees' Br., 20 (citing CR.129–30).

[43] *See* CR.128–30, ¶¶ 146–52.

[44] *See Harris v. City of Houston*, 151 F.3d 186, 190–91 (5th Cir. 1998) (denying the plaintiff's request for the Court to "'read into' their complaint additional requests for relief" and finding the case moot); *see also Sturm v. U.S. Dep't of Navy*, 76 Fed. Appx. 833, 834 (9th Cir. 2003); *Van Overdam v. Tex. A&M Univ.*, No. 4:18-CV-02011, 2024 WL 115229, at *4 (S.D. Tex. Jan. 10, 2024).

[45] Appellees' Br., 21.

[46] *E.T. v. Paxton*, 41 F.4th 709, 718 n.2 (5th Cir. 2022); *see also Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 552 (10th Cir. 2016); *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008).

[47] *See* Appellees' Br., 19–24.

**D.** **Plaintiffs did not establish the *Ex parte Young* exception.**

Plaintiffs claimed that the *Ex parte Young* exception to sovereign immunity applies as "each TDA official named in an official capacity is alleged to have some connection with the unlawful actions at issue."[48] But not just any "connection" will suffice. Rather, *Ex parte Young* requires that the official "must have the particular duty to enforce the statute [or regulation] in question and a demonstrated willingness to exercise that duty."[49] And "enforcement" in this context means "compulsion or constraint."[50] Here, Plaintiffs did not show that each official sued had a "demonstrated willingness" to "compel or constrain" Champion's compliance with the regulations in question. Thus, sovereign immunity bars their federal-based due process and equal protection claims.

Plaintiffs also argued that their claim for reinstatement is a viable request for prospective relief. Perhaps. But they also seek to effectively "void" TDA's order terminating Champion's contract and disqualifying its principals.[51] This is quintessentially retrospective relief, which is impermissible under *Ex parte Young*.[52] Plaintiffs did not argue otherwise.

---

[48] *Id.* at 25.

[49] *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (quotations omitted).

[50] *Id.*

[51] CR.136–37, ¶ 188; CR.139, ¶ 199.

[52] *See United States v. Abbott*, 85 F.4th 328, 336 (5th Cir. 2023).

10

## III. Plaintiffs Did Not Affirmatively Demonstrate A Viable Property-Based Due Course Of Law Claim.

### A. Plaintiffs' arguments for a protected interest run contrary to significant precedent.

#### 1. The Fifth Circuit rejected Plaintiffs' argument that requiring "consultation" with another entity is a substantive limit on discretion.

Plaintiffs contended that the CACFP regulation allowing "for convenience" terminations substantively limits TDA's ability to terminate Champion's agreement as it also requires "prior consultation" with the United States Department of Agriculture ("USDA").[53] The Fifth Circuit rejected a similar argument in *Henderson v. Sotelo*.

There, a city charter "condition[ed] an employee's removal on compliance with certain specified procedures," namely the "acquiring [of] the advice and consent of the City Commissioners."[54] The Fifth Circuit found that this did not create a protected interest: "A violation of . . . procedures, though it might give rise to some other cause of action against the employer, would not seem to *create* a property interest which otherwise did not exist."[55]

Here, the cited "consultation" requirement is nothing more than a *procedure* to be followed, not a *substantive* limit on TDA's discretion. As *Henderson* shows, procedures like this do not create protected property interests.

---

[53] 7 C.F.R. § 226.6(b)(4)(ii); Appellees' Br., 30–31.
[54] *Henderson v. Sotelo*, 761 F.2d 1093, 1098 (5th Cir. 1985).
[55] *Id.* at 1098–99 (quotations omitted).

11

### 2. Plaintiffs' arguments are irrelevant and foreclosed by binding precedent.

Plaintiffs argued that a "convenience" termination (1) does not result in CACFP ineligibility and (2) did not occur here.[56] They did not explain why these points are pertinent to the instant "protected interest" analysis. Regardless, binding precedent forecloses any possible arguments on this front.

The Texas Supreme Court's decision in *Burwell* highlights why Plaintiffs' points are irrelevant. There, the employer's manual stated that "employment at the Hospital is by mutual agreement and may be terminated by either the employee or the employer."[57] The manual provided that an employee may also be dismissed "for cause."[58] The manual stated that a "for cause" termination carries certain additional procedures and penalties if ultimately approved.[59]

The Court found that the manual did not create a protected property interest in the plaintiff's employment. The Court reasoned that while the manual "plainly provides that dismissal may be for cause," it "nowhere suggests that dismissal may be *only* for cause."[60] The Court did not find it relevant that the plaintiff was actually dismissed for cause,[61] thus contradicting Plaintiffs' arguments here.

The Eighth and Eleventh Circuits likewise found that the manner of contract

---

[56] Appellees' Br., 31
[57] *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006) (brackets omitted).
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *See id.* (citing the reasons for the plaintiff's dismissal).

termination or nonrenewal is irrelevant to a property interest analysis. In *McGuire v. Indep. Sch. Dist. No. 833*, a state law prevented high school coaches from being nonrenewed solely due to the "existence of parent complaints."[62] The Eight Circuit found that this law did not create a protected property interest and that the reason for the nonrenewal decision was irrelevant to this conclusion: "Even if McGuire could establish beyond doubt that the School Board's decision not to renew his contract was based solely on the existence of parent complaints, the School Board could decline to renew his contract anyway, for a different reason, or no reason at all."[63]

In *Econ. Dev. Corp. of Dade Cnty., Inc. v. Stierheim*, the plaintiff ("EDCO") was a "sub-grantee for Dade County pursuant to a grant program administered by [the U.S. Department of Housing and Urban Development]."[64] To distribute funds provided under this program, "the County signed a series of one-year contracts with EDCO."[65] The contract allowed the county to terminate the agreement either for cause or for convenience.[66] The county invoked the for-cause provision and terminated its agreement with EDCO.[67] EDCO sued on due process grounds.

The Eleventh Circuit found that EDCO did not have a protected property interest in the continuation of its contract with the county.[68] The court found that the

---

[62] 863 F.3d 1030, 1033–34 (8th Cir. 2017).
[63] *Id.* at 1036.
[64] 782 F.2d 952, 953 (11th Cir. 1986).
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.* at 954.

"hallmark" of a protected interest is "an individual entitlement . . . , which cannot be removed except 'for cause.'"[69] The court did not find a protected property interest because "the contract allowed the county to terminate the agreement at its convenience, i.e., without cause."[70]

The Eleventh Circuit found it irrelevant that the county terminated its contract with EDCO "for cause."[71] The court stated that "[i]f there was no property interest when the contract was entered into, no property interest was created by the contract's being terminated pursuant to one of its provisions instead of another."[72] The Court reasoned that "[i]t is *the existence of the convenience provision, not its invocation*, that defeats EDCO's claim that it was deprived of property without due process of law when the contract was terminated."[73]

One last point, Plaintiffs hint that they may be claiming some protected right to participate in the CACFP regardless of the terms of Champion's contract with TDA.[74] Even if properly preserved, this supposed right to CACFP participation is not a protected interest.

The Texas Supreme Court recently confirmed that "some occupational interests exist only because the government has created them or made them available."[75] "For

---

[69] *Id.* (quoting *Logan v. Zimmerman Brush*, 455 U.S. 422, 430 (1982)).
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* (emphasis added).
[74] *See* Appellees' Br., 28, 31.
[75] *Tex. Dep't of State Health Services v. Crown Distrib. LLC*, 647 S.W.3d 648, 655 (Tex. 2022).

14

due-process and due-course purposes, such an interest is properly characterized as a form of 'property' interest."[76] This means the interest "must be vested" to be "constitutionally protected."[77]

Plaintiffs' alleged right to CACFP participation falls under the precedent above as they only have this right because: (1) Congress decided to create this program; (2) the USDA enlisted TDA's help in administering this program; and (3) TDA decided to enter into an agreement with Champion to perform work under this program. Thus, Plaintiffs' interest must be vested to be constitutionally protected.[78] And as Defendants have explained, Plaintiffs' interest in the CACFP never vested.[79]

### 3. *Grounds* and *Teeuwissen* do not support Plaintiffs' position.

Plaintiffs rely on *Grounds v. Tolar* and *Teeuwissen v. Hinds County*.[80] But neither case supports their claim to a protected property interest.

In *Grounds*, the Texas Supreme Court found a protected interest because the teacher's contract could only be nonrenewed if a preestablished reason applied.[81] Thus, the "decision not to renew a particular teacher's contract [was] not entirely discretionary."[82]

But *Grounds* did not deal with the situation here, where a contract can be

---

[76] *Id.*
[77] *Id.* (quotations omitted).
[78] *See id.*
[79] *See, e.g., supra*, 10–14; Appellants' Br., 40–42.
[80] Appellees' Br., 28–30.
[81] *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex. 1993).
[82] *Id.*

terminated either for convenience or for cause. And Plaintiffs ignore significant precedent, including the Texas Supreme Court's *Burwell* decision, finding that a "for convenience" provision defeats a plaintiff's claim to a protected interest in the contract.[83]

*Teeuwissen* is also no help to Plaintiffs. The contracts there "contained a clause *requiring* the County to pay [the plaintiff] for a full year's worth of work even if the board terminated the contract early."[84] The Fifth Circuit found that the plaintiff "had a protected property interest in the money [due to him under his contracts]."[85]

But Plaintiffs asserted no similar *guaranteed* right to continue its CACFP participation. Nor could they, as TDA could terminate Champion's contract at any time, for any reason, due to the agreement's "for convenience" provision. Thus, Plaintiffs did not assert a protected property interest.

### B. Plaintiffs did not show a deprivation of their procedural due process rights.

Plaintiffs' arguments did not establish a deprivation of their right to notice and an opportunity to be heard. There are four reasons why.

First, Plaintiffs cited no caselaw actually finding a due process violation in a situation similar to this one.[86]

---

[83] *See Burwell*, 189 S.W.3d at 739; *see also McGuire*, 863 F.3d at 1035–36; *Econ. Dev. Corp. of Dade Cnty., Inc.*, 782 F.2d at 954; *Wallace v. Robinson*, 940 F.2d 243, 247–48 (7th Cir. 1991).
[84] *Teeuwissen v. Hinds Cnty. Mississippi, by & through its Bd. of Supervisors*, 78 F.4th 166, 169 (5th Cir. 2023) (emphasis added).
[85] *Id.* at 170–71.
[86] *See* Appellees' Br., 32–35.

Second, Plaintiffs ignored that (1) their main argument is that Defendants did not provide the required corrective action notice and (2) they had a full evidentiary hearing before a neutral decisionmaker *on this exact issue*.[87] Plaintiffs never explained how they can possibly have a viable procedural due process claim in this context.

Third, Plaintiffs identified no caselaw finding that a party is constitutionally entitled to not just notice of the charge, but also specific instructions on how to *cure or resolve* that charge. And they did not address Defendants' precedent holding to the contrary.[88]

Finally, Plaintiffs offered no response to Defendants' arguments—backed by significant caselaw—that (1) the required pretermination process is generally light when more comprehensive post-deprivation procedures are available (as is the case here) and (2) the process Plaintiffs received was more than enough to satisfy due process's requirements in this context.[89]

## IV. Plaintiffs Did Not Affirmatively Demonstrate A Viable Stigma-Plus Claim: They Received Constitutionally Sufficient Process, And They Did Not Establish A False Publication.

Plaintiffs' arguments do not move the needle on their stigma-plus claim. To start, nothing they said changes the fact that they received constitutionally sufficient process, which defeats a stigma-plus claim.[90]

---

[87] Appellants' Br., 42–43.
[88] *Id.* at 43.
[89] *Id.* at 38–46.
[90] *See Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).

17

Also, Plaintiffs commented that "Appellants made false charges" and that TDA "published . . . that Appellees engaged in conduct amounting to a serious . . . deficiency."[91] But these remarks are no substitute for well-pled allegations showing that Defendants published false statements about Plaintiffs, as needed for their stigma-plus claim.[92]

Reviewing Plaintiffs' amended petition confirms that they did not affirmatively demonstrate a false publication. In paragraph 99, Plaintiffs asserted that TDA sent the USDA a letter that "identified three serious deficiencies for which TDA did not accept [Champion's] proposed corrective action plan."[93] Plaintiffs mentioned that the letter noted "Champion's procedures for meal counting" and TDA's reasons for "reject[ing] th[ese] procedure[s]," but they asserted no facts showing these statements to be false.[94]

Plaintiffs also did not meaningfully identify what the "three serious deficiencies" were nor explain why they should be considered false.[95] And while Plaintiffs asserted slightly more information about some of TDA's *initial* serious deficiency findings, they did not allege that these issues were one of the three uncorrected deficiencies that led to Champion's contract termination and that TDA "published" to the USDA.[96] Further, there is nothing false about these initial findings. Rather, they are clear program

---

[91] Appellees' Br., 36–37.
[92] *See Hughes*, 204 F.3d at 226.
[93] CR.114, ¶ 99.
[94] *See* CR.115, ¶ 100.
[95] *See* CR.114–16, ¶¶ 99–103.
[96] *See* CR.114–16, ¶¶ 99–103; *see also* CR.112, ¶ 93 (noting that TDA identified at least nine serious deficiencies).

18

violations that can qualify as serious deficiencies, as Defendants previously explained.[97]

In paragraph 119, Plaintiffs alleged that the administrative review officer's order was sent to the USDA, which led to the USDA putting Plaintiffs on the National Disqualified List.[98] Even if this counts as a publication by *TDA*, and Plaintiffs never explained why it should, they still did not identify any false statements in this order. At most, Plaintiffs alleged that the order noted that they were disqualified from future CACFP participation.[99] But this is a *true* statement as Plaintiffs acknowledged that they were, in fact, disqualified from the CACFP as of the date of this order.[100]

Finally, the lenient standard of review applied at the pleading stage does not save Plaintiffs. Binding precedent requires them to "affirmatively demonstrate[]" the viability of their stigma-plus claim and to plead all "essential factual allegations" that would be sufficient "to support a judgment" on this claim if proven.[101] Plaintiffs did not do so here. Thus, their stigma-plus claim should be dismissed.[102]

---

[97] Appellants' Br., 25–26.
[98] CR.120, ¶ 119.
[99] CR.120, ¶ 119.
[100] CR.117, ¶ 107.
[101] *See Matzen v. McLane*, 659 S.W.3d 381, 388–89 (Tex. 2021).
[102] Plaintiffs argued they can assert a stigma-plus claim under procedural *and substantive* due process. Appellees' Br., 39–40. Yet they admitted that they cited no caselaw "squarely address[ing]" this issue and finding in their favor. *Id.* And they did not counter Defendants' on-point precedent holding that a stigma-plus claim resides in procedural, not substantive, due process. Appellants' Br., 48.

19

## V. Plaintiffs Did Not Affirmatively Demonstrate A Viable Substantive Due Course Of Law Claim.

### A. Plaintiffs lack a protected property interest, and they did not apply the right test for analyzing their "stigma-plus" interest.

A plaintiff must have a protected liberty or property interest to sustain a substantive due course of law claim.[103] Plaintiffs did not assert a protected property interest, as previously explained.[104]

Turning to a liberty interest, Plaintiffs contended that they have a "stigma-plus liberty interest," meaning an injury to their reputations.[105] They argued that their substantive-based claim concerning this interest is viable because Defendants acted "arbitrarily."[106] But this is not the right test for a due process claim arising from a "stigma-plus" interest.

In *Paul v. Davis*, the U.S. Supreme Court held that the infliction of a stigma on a person's reputation does not, by itself, infringe upon a protected liberty interest.[107] Rather, "[a] constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."[108]

Put simply, a plaintiff must establish a viable stigma-plus claim to have a

---

[103] *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018).
[104] *Supra*, 10–16; Appellants' Br., 40–42.
[105] Appellees' Br., 40; CR.120, ¶ 119 (noting that Plaintiffs' liberty interest turns on an alleged harm to their "reputation").
[106] Appellees' Br., 40–42.
[107] 424 U.S. 693, 710–11 (1976).
[108] *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981).

20

protected liberty interest in this context.[109] And to do that, a plaintiff must satisfy the multi-element test created to assess stigma-plus claims, as Plaintiffs acknowledged elsewhere in their response.[110]

Yet Plaintiffs did not plead a viable stigma-plus violation.[111] Thus, they lack a protected property and liberty interest, and their substantive due course of law claim should be dismissed.

### B. Plaintiffs' arguments concern procedural, not substantive, due process, and they did not allege sufficiently arbitrary conduct.

Even if the "arbitrary" standard applies,[112] Plaintiffs still did not establish a viable substantive due course of law claim. They mainly contended that Defendants arbitrarily did not provide the required corrective action notice.[113] But this argument sounds in *procedural*, not *substantive*, due process.

Per the Texas Supreme Court, the "substantive due process guarantee protects against the arbitrary and oppressive exercise of government power, *regardless of the fairness of the procedures*."[114] Thus, when a plaintiff challenges the fairness of the procedures used,

---

[109] *See Hughes*, 204 F.3d at 226–27.

[110] *See* Appellees' Br., 35–37; *see also Ristow v. Hansen*, 719 Fed. Appx. 359, 365–66 (5th Cir. 2018) (applying the stigma-plus test to analyze the plaintiff's "claim[] that his substantive due process rights were violated when the officers allegedly prevented him from gaining employment with other law-enforcement agencies by stating he was unemployable as a peace officer").

[111] *Supra*, 17–19; Appellants' Br., 46–48.

[112] *See* Appellants' Br., 50–51 (explaining why the "shocks the conscience" standard should apply); *see also Fass v. Benson*, No. 05-21-00799-CV, 2023 WL 3860441, at *8 (Tex. App.—Dallas June 7, 2023, no pet.) (applying a "shocks the conscience" analysis to a substantive due course of law claim arising under the Texas Constitution).

[113] Appellees' Br., 40

[114] *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 659 (Tex. 2004) (emphasis added).

courts review the claim under procedural, not substantive, due process.[115]

Plaintiffs' argument concerning their alleged lack of notice clearly concerns the fairness of the procedures used to terminate Champion's CACFP agreement. Thus, this contention does not support their *substantive* due course claim.

Plaintiffs also did not establish sufficiently arbitrary conduct. First, Plaintiffs argued that TDA arbitrarily required Champion to submit daily, as opposed to weekly, meal count forms.[116] But there is nothing inherently improper about TDA interpreting a regulation requiring it to "collect[] and maintain[] . . . *daily* records . . . and the *daily* meal counts"[117] to also require participants to submit these records on a *daily* basis. Also, the regulations give state agencies the authority to "establish procedures to collect and maintain" program records like this,[118] and they allow agencies to classify a participant's "[f]ailure to maintain adequate records" as a serious deficiency.[119] Thus, it is hard to see how TDA acted arbitrarily in this context.

Second, Plaintiffs misrepresented their pleadings. They argued that Champion's agreement was "terminated" over this "daily form" issue.[120] But their amended petition contains no allegations showing that this was one of the three uncorrected serious deficiencies that led to Champion's contract termination.

---

[115] *See, e.g.*, *Martinez v. Tex. Dep't of Protective & Regulatory Services*, 116 S.W.3d 266, 271 (Tex. App.—El Paso 2003, pet. denied); *In re G.C.*, 66 S.W.3d 517, 524–25 (Tex. App.—Fort Worth 2002, no pet.).
[116] Appellees' Br., 41–42.
[117] 7 C.F.R. § 226.15(e)(4) (emphasis added).
[118] *Id.* at § 226.15(e).
[119] *Id.* at § 226.6(c)(3)(ii)(F).
[120] Appellees' Br., 41.

22

Finally, Defendants' conduct must be analyzed "as a whole,"[121] and their actions are presumed to be constitutional.[122] Plaintiffs admitted that: (1) TDA gave Champion many chances to correct its deficiencies; (2) TDA officials met with Champion's leaders on multiple occasions to discuss the matter; and (3) TDA *accepted* most of Champions' proposals to cure its deficiencies.[123] This is hardly evidence of constitutionally "arbitrary" government conduct.

## VI. Plaintiffs Did Not Affirmatively Demonstrate A Viable Equal Protection Claim.

### A. Plaintiffs' equal protection claim rests on legal conclusions.

Plaintiffs' arguments on response do not change the fact that they based their equal protection claim on legal conclusions and threadbare recitations of the elements of such a claim, which need not be accepted as true.[124]

Plaintiffs disputed this, arguing they identified "specific ways" Champion was treated differently than other entities.[125] But these "specific ways" merely concern vague allegations that other unidentified entities: (1) engaged in "similar conduct"; (2) "were allowed to cure similarly identified deficiencies"; and (3) received "more guidance about

---

[121] *Estate of Angel Place v. Anderson*, No. 19-1269, 2022 WL 1467645, at *5 (10th Cir. May 10, 2022); *Steinberg v. D.C.*, 901 F. Supp. 2d 63, 75 (D.D.C. 2012).

[122] *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

[123] Appellants' Br., 48–49.

[124] *See City of Houston v. State Farm Mut. Auto. Ins. Co.*, 712 S.W.3d 707, 715–16 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (noting that "conclusory statements" and "threadbare recitations of the elements of a cause of action" supported by such statements need not be accepted as true); *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016, pet. denied) (similar).

[125] Appellees' Br., 46 (emphasis omitted)

how to cure" their similar deficiencies.[126]

These allegations are legal conclusions. Plaintiffs did not identify these other entities, explain what their "conduct" was, or detail what the notice and corrective action process was like for these other participants. Rather, they merely couched an essential element of their equal protection claim—that the comparators' situations were "directly comparable in all material respects"[127]—as a factual allegation. Courts have found similar assertions to be legal conclusions that need not be accepted as true.[128]

Plaintiffs also stated that other entities had "at least some food waste without TDA characterizing that waste as a serious deficiency."[129] Like the allegations above, this vague "zero waste" assertion is a legal conclusion that need not be accepted as true. Also, Plaintiffs did not allege that Champion had *less* food waste than the unidentified comparators. Indeed, Plaintiffs neither mentioned the amount of waste it was cited for nor the amount of waste TDA allowed for these other entities, as needed to show that

---

[126] CR.118, ¶ 112.

[127] *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd).

[128] *See Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) (finding a plaintiff's similarly situated allegations to be legal conclusions as he did not identify the "specific person" or "provide . . . specifics as to their violations"); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011) (noting that the plaintiff alleged that "numerous parcels of land in Cherokee County exist in conditions comparable to the Subject Property or exhibit conditions similar to and in many cases much worse than those alleged by the CCHD to exist on the Subject Property" and finding this "broad allegation" to be a "formulaic recitation" insufficient to show differential treatment) (quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "a legal conclusion couched as a factual allegation" should still be considered to be a legal conclusion); *State Farm Mut. Auto. Ins. Co.*, 712 S.W.3d at 715–16 (confirming that, in Texas state court, "conclusory statements" and "threadbare recitations of the elements of a cause of action" supported by such statements need not be accepted as true).

[129] CR.108, ¶ 80.

24

they were treated less favorably under materially similar conditions.[130] Further, Plaintiffs did not identify their comparators' owners' race or sex, as required to establish that Champion's owners were treated differently than other individuals "outside of [their] protected group."[131]

> **B.  This Court should follow the seemingly universal precedent holding that a class-of-one theory does not apply in the government-contractor context.**

Seemingly every court to consider the issue has extended *Engquist's* holding, which barred class-of-one claims in the employer-employee context, to the government-contractor context.[132] Plaintiffs cited no caselaw to the contrary.[133] And their arguments that *Engquist* does not apply here are unconvincing.

Plaintiffs contended, without support, that *Engquist* should not apply to government-contractor relationships as "a government agency has far more discretion in managing its at-will workforce" than a state agency does when administering a program like the CACFP.[134] This ignores numerous laws—including Chapter 21 of the Texas Labor Code, Title I of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Family and Medical Leave Act,

---

[130] *See Jones*, 331 S.W.3d at 787; *Giles v. City of Dallas*, 539 Fed. Appx. 537, 543 (5th Cir. 2013) (noting that an equal protection plaintiff must show "less favorable treatment" than its comparator); *see also In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 662 (Tex. 2023) ("The plaintiff must plead the essential factual allegations supporting those claims, which must be sufficient to support a judgment if ultimately proven.") (quotations omitted).

[131] *See Giles*, 539 Fed. Appx. at 543.

[132] Appellants' Br., 56–57.

[133] *Id.* at 47–48.

[134] *Id.* at 48.

and so on—that restrict government discretion in the employment context.

Plaintiffs also argued that *Engquist's* holding applies only when the plaintiff "perform[s] a service *for* the [government employer]."[135] They contended that *Engquist* is inapplicable here as TDA worked with Champion "to serve the public."[136]

This makes no sense. Government employees (i.e., public servants) also "serve the public." Yet *Engquist* still found that a class-of-one claim cannot be brought in the employer-employee context. Also, Plaintiffs cited no caselaw finding their distinction meaningful. Further, Texas law requires TDA to "administer" the CACFP.[137] A participant's CACFP work would aid TDA's administration of this program and thus would be a "service" to TDA under any sense of the word.

## VII. The Redundant Remedies Doctrine Bars Plaintiffs' Request To Reverse TDA's Order.

Per Plaintiffs, they sidestepped the redundant remedies doctrine when they reclassified their APA-based request to "void" TDA's order as a request to "reverse" that order in other claims for relief.[138] Plaintiffs mainly relied on *Tex. State Bd. of Pharmacy v. Seely* for this point. But *Seely* did not involve the redundant remedies doctrine, nor did the Third Court finding a meaningful distinction between "voiding" and "reversing" an order.[139] Thus, *Seely* is irrelevant.

---

[135] *Id.*
[136] *Id.*
[137] Tex. Agric. Code § 12.0025.
[138] Appellees' Br., 49–50.
[139] *See Tex. State Bd. of Pharmacy v. Seely*, 764 S.W.2d 806, 811–15 (Tex. App.—Austin 1988, writ denied).

Put simply, Plaintiffs cited no authority supporting their view that the limit on redundant remedies is really no limit at all, as it can be bypassed merely by changing the word "void" to "reverse." This Court should find that the redundant remedies doctrine bars Plaintiffs' request to reverse the order terminating Champion's contract and disqualifying its principals.

## VIII. Plaintiffs Did Not Affirmatively Demonstrate A Viable Takings Claim.

### A.    Plaintiffs did not show a deprivation of a protected property interest.

Plaintiffs contended that they have a protected interest in "contract-based funding" under the CACFP.[140] They relied on the Third Court's decision in *Texas Telephone Ass'n*, but that case is inapposite. There, the court's taking analysis largely depended on its finding that state law *required* the Public Utility Commission of Texas to fund the underlying program and make payments to providers under this program.[141]

But this case is different. TDA could terminate Champion's CACFP agreement—and thus its funding under this program—at any time "for convenience." Again, courts have refused to find a protected property interest in this situation.[142]

### B.    Plaintiffs ignored the Texas Supreme Court's test for finding a "public use."

Plaintiffs' arguments on the "public use" issue are irrelevant. Per the Texas Supreme Court, "[p]roperty is taken for public use only when there results to the public

---

[140] Appellees' Br., 53–54.
[141] *Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 251, 268–71 (Tex. App.—Austin 2022, no pet.).
[142] *Supra*, 10–16; Appellants' Br., 39–42, 59.

some definite right or use in the business or undertaking to which the property is devoted."[143]

Plaintiffs ignored this standard. Thus, they never explained how the "public" received some "definite right or use" in either Champion's CACFP agreement or its funding under this contract. To the extent Plaintiffs are suggesting that TDA enriched itself by cancelling Champion's contract, they cited no factual allegations to support this point.[144]

## C. TDA acted under its colorable contract rights when it terminated Champion's contract pursuant to the contract's terms.

To recap, Plaintiffs' takings claim fails if TDA terminated Champion's agreement pursuant to "colorable contract rights," as opposed to using its sovereign eminent-domain powers.[145] Here, the alleged taking occurred when TDA terminated Champion's *contract* via the "for cause" provision incorporated into that *contract*.[146] Commonsense dictates that TDA was acting pursuant to its "colorable contract rights" in this scenario.

Plaintiffs' arguments do not change this conclusion. They contended that TDA exercised its eminent-domain powers as it contracted with Champion to help provide food to needy children.[147] In *State v. Holland*, the State also contracted with a party to

---

[143] *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 186–87 (Tex. 2019) (quotations omitted).
[144] *See* Appellees' Br., 55–56.
[145] *See State v. Holland*, 221 S.W.3d 639, 643–44 (Tex. 2007).
[146] Appellants' Br., 11–18, 59–60.
[147] Appellees' Br., 54–55.

help Texas citizens; the contract there aimed to help the State "abate oil pollution in [Texas'] costal waters."[148] Yet the Texas Supreme Court still found that the State acted under its colorable contract rights and dismissed the plaintiff's takings claim.[149]

Finally, the Texas Supreme Court has focused the "contract/sovereign" analysis on the manner in which the property was provided. Thus, the Court has recognized that the State acts in a contractual situation when a plaintiff provided the property "voluntarily" and "by virtue of [a] contract."[150] That is exactly what happened here.

## PRAYER

This Court should reverse.

Date: September 22, 2025

Respectfully Submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ Todd Dickerson
TODD DICKERSON

---

[148] *Holland*, 221 S.W.3d at 641.

[149] *Id.* at 643–44.

[150] *Gen. Services Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 599 (Tex. 2001).

Attorney-in-Charge
Texas Bar No. 24118368
Todd.Dickerson@oag.texas.gov
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 228-7289
FAX: (512) 320-0667
**COUNSEL FOR DEFENDANTS-APPELLANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically and that notice of this filing will be sent to the following persons through Texas's electronic filing system on September 22, 2025:

Kevin J. Terrazas
Jennifer A. Foster
Benjamin L. Dower
Terrazas PLLC
1001 S. Capital of Texas Hwy., Suite L-250
Austin, TX 78746
Telephone: (512) 680-3257
**COUNSEL FOR PLAINTIFFS-APPELLEES**

*/s/ Todd Dickerson*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the above and foregoing Brief for Appellant has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font for text and 12-point Garamond font for footnotes, and contains 7,225 words, as determined by the computer software's word-count function, excluding the portions of the brief exempt by Texas Rule of Appellate Procedure. Tex. R. App. P. 9.4(i)(1).

*/s/ Todd Dickerson*

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Thomas Ray on behalf of Todd Dickerson
Bar No. 24118368
thomas.ray@oag.texas.gov
Envelope ID: 105897861
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellants' Reply Brief
Status as of 9/22/2025 12:36 PM CST

Associated Case Party: Be a Champion, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kevin Terrazas | 24060708 | kterrazas@terrazaspllc.com | 9/22/2025 12:05:38 PM | SENT |
| Benjamin Dower | 24082931 | bdower@terrazaspllc.com | 9/22/2025 12:05:38 PM | SENT |
| Jennifer Foster | 24104938 | jfoster@terrazaspllc.com | 9/22/2025 12:05:38 PM | SENT |

Associated Case Party: Texas Department of Agriculture

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thomas Ray | | thomas.ray@oag.texas.gov | 9/22/2025 12:05:38 PM | SENT |
| Todd Dickerson | | todd.dickerson@oag.texas.gov | 9/22/2025 12:05:38 PM | SENT |